## Kisterbock's Appeal.

## In the Estate of the Premium Loan Association.

1. An act, innocent in itself, may be so injurious in its consequences that the law declares it to be fraud, and forbids it.

2. One who was a director of a corporation, long insolvent by declaring dividends out of the capital, with his knowledge and participation, is not entitled to receive from the estate of the corporation, in the hands of its assignee for the benefit of creditors, any part of a loan made by him to the corporation to pay a dividend fraudulently declared, until the stockholders are fully paid.

3. Every person depositing any sum of money with the corporation became a stockholder. *Held,* that the stockholders who made their deposits after the fraudulent dividend, as well as those who made them before, were entitled to be paid before the director.

APPEAL by Josiah Kisterbock from the Court of Common Pleas of Philadelphia, in the matter of the distribution of the estate of The Premium Loan Association assigned for the benefit of creditors, February 21st 1860. By the report of the auditor it appeared that the association was incorporated March 8th 1855. The object of the association as stated in its constitution, was the accumulation of a fund from weekly contributions and fines, premiums on loans, and interest on investments, for the benefit of its members. A person depositing a sum however small became a stockholder and could vote, but could not bid for a loan unless the full value of his stock, $200, had been paid. After the assignment, an accountant examined the books of the association, and found that a dividend declared, August 22d 1856, left the association insolvent to the amount of $2336.58. They continued declaring large dividends till August 20th 1858, when they declared a dividend of $7092.14, for which there was no surplus, but a large deficiency. If the assets had been worth what they called for, they would not have been sufficient to pay the creditors at the time of any of the dividends. The insolvency arose from fraud in the directors in paying dividends without profits, or taking losses into account. The claims presented to the auditor were for deposits made by stockholders, except Kisterbock's, which was for a loan made by him to the association for which he took this note:—

"Due, Philadelphia, August 1st 1858, Josiah Kisterbock, by The Premium Loan Association, one thousand dollars, on demand."

"$1000.      "JOHN WILSON,

         "President.

"WILLIAM A. STEELMAN,

         "Secretary."

Kisterbock was a director at the time of the loan: he had served as director from March 1857 to March 1858, and was again elected in April 1858, and so continued until July 1859, .when he was elected treasurer; he filled that office till October 18th 1859. The condition of the association was one of fraudulent insolvency as far back as August 1858. Kisterbock was an active director, and attended in the board regularly. The loan was made by Kisterbock the day after the dividend of August 1858, and was used to pay the dividends which were declared in fraud of the rights of the stockholders. The auditor decided that:—

" The association being insolvent by the fraudulent actions of the directors in declaring dividends for the payment of which there were no profits, and the claimant being an active director at the time of the loan and of the insolvency, the law will presume such knowledge of the condition of the affairs of the association as to prevent a recovery of the claim presented;" and he accordingly disallowed it.

The court below confirmed the report of the auditor; this was assigned for error.

*Lynd* and *McMurtrie*, for the appellant.—The auditor does not find that Kisterbock actually participated in declaring a .dividend, or knew of the insolvency, or made the loan to pay a dividend, or was actuated by wrong motive. The cases of Marsch *v.* Saving Fund, 19 Leg. Intel. 140; Robinson *v.* Smith, 3 Paige 222; Scott *v.* Depeyster, 1 Ed. Ch. 513; Leffmar *v.* Flanigan, Leg. Intel. May 8th 1863, p. 148, were cases of *constructive* fraud. The auditor has declared *actual* fraud to be a *presumption* of law. There is no statute declaring a loan by a director to an insolvent corporation, without actual knowledge of the insolvency or misapplication of the money, fraud in law. There was no restriction on a corporation of this character against dividing its capital. If a liability could be established against Kisterbock as to creditors to avoid circuity, the appellees are but stockholders; and to avoid circuity, the sum which the defendant would recover must be the same as that for which the plaintiff is suing: Charles *v.* Altin, 15 Com. B. 46. The stockholders who received their share of the dividend paid with this loan cannot complain, since they received it and were not injured by the payment. And if there had been evidence to show liability, there was no evidence to show the degree.

*J. B. Gest* and *J. W. Paul*, for appellees.—The auditor finds that the insolvency of the company was caused by the direct fraud of the directors, and held that Kisterbock was a participant in the fraud. The loan was in perpetration of a fraud: the due-

[Kisterbock's Appeal.]

bill was carrying it out. Fraud vitiates everything, and renders the due-bill void. A promise to pay money in pursuance of a fraudulent agreement, or an illegal transaction of any kind, cannot be recovered on. A plaintiff cannot recover on a bond, the consideration of which grows out of an illegal consideration: Swan v. Scott, 11 S. & R. 164. If any part of an indivisible consideration for a promise is illegal, the whole is void: Filson's Trustees v. Himes, 5 Barr 452; Frazier v. Thompson, 2 W. & S. 235; Chase's Executors v. Burkholder, 6 Harris, 50–2. A promissory note given for an illegal consideration is void: Yundt v. Roberts, 5 S. & R. 139. A bond given for an illegal or immoral consideration is void: Mitchell v. Smith, 4 Dall. 269.

Even though a penalty be imposed by law for the illegal transaction, an action founded on the transaction cannot be maintained: Seidenbender v. Charles, 4 S. & R. 157; Biddis v. James, 6 Binn. 329. A fraudulent contract as between the parties cannot be enforced: Thomas v. Brady, 10 Barr 169: see also 1 Smith's Lead. Cas., p. 154*; Collins v. Blantern, and notes.

The opinion of the court was delivered, February 19th 1866, by

AGNEW, J.—The doctrine of constructive fraud has nothing to do in this case. An act innocent in the intention may be so injurious in the consequences, that the law declares it to be a fraud and forbids it. Such are the acts prohibited by the statutes of 13 and 27 Elizabeth. Out of the act the law constructs the fraud, though not tainted with actual fraud. But legal presumptions lie thickly strewn in the pathway of evidence. A state of facts being proved, the law makes its own inference and from it pronounces that another fact must have existed. Thus from a receipt for one year's rent in full, a prior year's rent is presumed to be paid. This is the precise character of the auditor's finding. He presumes no constructive fraud, but from certain facts infers Kisterbock's knowledge of the fraudulent insolvency of the association, and this knowledge being found as a fact, he thence finds his participation in the fraud.

As a matter of evidence was he not justified in this finding? The facts from which he draws his conclusion were that the financial condition of the association was one of fraudulent insolvency, as far back as 1856; that this was caused by the fraudulent acts of the directors, in declaring dividends when there were no profits to be divided; that Kisterbock was an active director from March 1857 till July 1859, and attended regularly to the discharge of his duties in the board; that on the 20th August 1858 the board declared a dividend of $7092.41, for the payment of which there were no surplus profits, but a large deficiency existing on account of former payments. He then finds that on the day following the

[Kisterbock's Appeal.]

dividend of August 20th 1858, Kisterbock lent to the association the money for which he took the note of August 21st 1858, and this money he finds was lent by him to pay upon this fraudulent dividend. On this evidence had the question of Kisterbock's knowledge of the fraud been submitted to a jury and found, would a court set aside the verdict? We think not. But the report of an auditor, like the verdict of a jury, is presumptively right. If Kisterbock, being a director himself, knew of the fraudulent insolvency, and that this dividend was declared out of the capital to the wrong and injury of the stockholders, and lent his money to carry the fraud into effect, he participated in it; and the real question then is, shall he now be permitted to take his money out of the remnant of the capital of the stockholders? for this is what the fund represents, the association being insolvent.

The question is not whether he might enforce his demand against the corporation, if it were solvent, but he here seeks to have satisfaction out of a fund which belongs to the stockholders, whose interests he has betrayed. The corporation is insolvent, and some one must lose. Shall it be the innocent stockholders, or the guilty participant in the fraud which caused the insolvency? It is not a mere set-off, or a counter-claim by reason of simple liability of the corporation, but it is a claim to come in on the remnant of the corporate effects, constituting a fund to be distributed justly upon the evidence. He assisted by fraud to reduce the association to insolvency, and thereby to bring the wreck of its fortunes into distribution, and now he seeks to put in his hand and withdraw from this fund the very money he gave to carry out the fraud. Every principle of justice requires him to be postponed until the stockholders whom he defrauded are satisfied.

Nor can we see that the difference of time in making the deposits which created the depositors stockholders changes the result. The fraud which produced the insolvency was running for months, while Kisterbock was a director, and before the dividend of August 1858 was declared, to pay which he lent this money. The stockholders who received a portion of their dividends (about one-seventh) out of his money, received it in ignorance of the source, and on the faith it was a *bonâ fide* dividend. What compensation is this portion for the fraud which has continued for months, and ended in the ruin of the association in which their capital was risked? What merit has he to demand an investigation and analysis of the relations of the prior and subsequent stockholders to enable us so to distribute this money as to equalize their claims, and if he had, how can we reach it either conveniently or justly? Like one who unlawfully mixes his goods with mine so that I cannot distinguish his, he must suffer, not I.

[Kisterbock's Appeal.]

And notice, too, that the money he asks to withdraw is not his own identical money, but it is the wreck of the capital of the stockholders; and it is this remnant he seeks to take to pay a debt which, as the trustee and guardian of their interests, he fraudulently contracted with himself. His money was paid out, and it would be most difficult to settle the equities of prior and subsequent stockholders as they existed at the time the assignment was made. The property and assets assigned belonged to all the stockholders then, and the account must be settled and the equities adjusted as of that time. Upon the whole case we think he is without merit, and is not entitled to share in this fund.

The decree is therefore affirmed, and the appellant ordered to pay the costs of the appeal.