## Childs, Appellant, *v.* Adams.

*Equity—Findings of fact—Review—Appeals.*

1. The findings of fact of a trial judge sitting as a chancellor will be
accepted by the appellate courts as having the same force and effect
as the verdict of the jury; and this rule is especially applicable where
such findings are the result of an investigation of the business affairs
of a manufacturing corporation, its system of bookkeeping, its method
of dealing with its own officers and the outside world and kindred
matters which require in such an investigation, the knowledge and skill
of business or bookkeeping experts rather than the application of es-
tablished legal principle.

*Corporations—President—Treasurer—Directors—Illegal dividends— Acts of July 18, 1863, P. L. (1864) 1102, and April 29, 1874, P. L. 73.*

2. Where the president and treasurer of a corporation are permitted to control and manage the whole business of the company without any interference by the directors or stockholders, and they declare and distribute dividends in good faith out of what they suppose is profits, although the company is in fact insolvent, they cannot be compelled to pay back the sums thus distributed to the corporation by a bill in equity filed against them by the general receiver of the company. Their only liability is to creditors who must first have the amount of their indebtedness adjudicated in an action against the corporation, and then file their bill for themselves and other like creditors against the officers who have made the illegal payments.

3. The liabilities of the officers and directors of a corporation specially imposed upon them by the statute, are not assets of the corporation so as to give a general receiver authority to enforce them.

4. Illegal distribution of what are supposed to be profits, made by the officers of a corporation without any formal action by the board of directors are dividends within the meaning of the Acts of July 18, 1863, P. L. (1864) 1102, and April 29, 1874, P. L. 73, and such moneys so distributed are not assets of the corporation in the hands of the officers.

Argued Dec. 10, 1909. Appeal, No. 246, Oct. T., 1909, by plaintiff, from decree of C. P. Montgomery Co., March T., 1908, No. 5, on bill in equity in case of Louis M. Childs, Receiver of the Eureka Knitting Company, v. Edward S. Adams and Edwin Metcalf. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Bill in equity to compel the return of alleged illegal dividends. Before SWARTZ, P. J., and WEAND, J.

The facts are stated in the opinion of the Superior Court.

*Errors assigned* were various findings of fact and conclusions at law.

*Louis M. Childs*, with him *Henry M. Brownback*, for appellant.—A dividend is that portion of the profits and surplus funds of a corporation which has been actually

set apart by a valid resolution of the board of directors, or by the shareholders at a corporate meeting for distribution amongst the stockholders, etc.: Rose v. Barclay, 191 Pa. 594; Com. v. R. R. Co., 29 Pa. 370; Com. v. Ry. Co., 74 Pa. 83; City of Allegheny v. Ry. Co., 179 Pa. 414; Moss's App., 83 Pa. 264; Kisterbock's App., 51 Pa. 483; In re Exchange Banking Co., L. R. 21 Ch. Div. 519.

The capital stock cannot lawfully be impaired by the action of the stockholders and we claim that the voluntary payment of it by the treasurer cannot be converted into a dividend lawful as to him by the mere receipt of the money by the stockholders: Lane's App., 105 Pa. 49; Upton v. Tribilcock, 91 U. S. 45; Sanger v. Upton, 91 U. S. 56; Bell's App., 115 Pa. 88.

The receiver is the proper person to bring the suit: State Bank of Pittsburg v. Kirk, 216 Pa. 452; Cushing v. Perot, 175 Pa. 66; Bailey v. Pittsburg Coal R. R. Co., 139 Pa. 213; Lane's App., 105 Pa. 49; Bell's App., 115 Pa. 88; McCarty's App., 110 Pa. 379.

*Montgomery Evans*, with him *John M. Dettra*, for Edwin Metcalf, appellee.—We submit, as a proposition of law, that the liability of directors and officers of a corporation to creditors as claimed in this proceeding is purely statutory, and the remedies are not by a common-law action, but by the method which the statute has provided and that such method is exclusive: Miller Paper Co. v. Paper Co., 34 Pa. Superior Ct. 315; Ahl v. Rhoads, 84 Pa. 319; Mechanics' Building, etc., Assn.'s Est., 202 Pa. 589; O'Reilly v. Bard, 105 Pa. 569; Lane's App., 105 Pa. 49.

*E. L. Hallman*, for Edward S. Adams, appellee.

OPINION BY HEAD, J., July 20, 1910:

The sound reasons which support the rule that the findings of fact of a trial judge, sitting as a chancellor, will be accepted by the appellate courts as having the same force and effect as the verdict of a jury have been

too often stated to require a repetition here. The wisdom and the necessity of such a rule are especially apparent in a case like the present one where the conclusions of fact, adopted by the trial judge, are the result of an investigation of the business affairs of a manufacturing corporation, its system of bookkeeping, its method of dealing with its own officers and the outside world, and kindred matters which require, in such an investigation, the knowledge and skill of business or bookkeeping experts rather than the application of established legal principles. The ability and earnestness with which a number of these conclusions have been assailed by the learned counsel for the appellant have necessarily invited a somewhat laborious examination of the testimony and the various statements, groups of figures and exhibits embraced therein. We are obliged to say, however, as the result of such examination, that we are unable to discover any such plain or palpable error in the conclusions of fact reached by the learned trial judge as to warrant us in setting them aside and adopting those contended for by the appellant. We therefore accept these conclusions and dismiss the numerous assignments of error relating solely to this subject.

The important facts thus found, in so far as a statement of them becomes necessary to develop the contention of the parties, may be thus put in narrative form. The Eureka Knitting Company was a manufacturing corporation duly organized under the general act of 1874 and its supplements. It seems to have been created primarily for the purpose of taking over the plant and doing business of Edward S. Adams, who had theretofore been engaged in the same line of manufacturing. The property was paid for in the capital stock of the corporation and Adams became the owner of about nine-tenths of the entire capital. The plant was shortly after enlarged by the purchase of the machinery of another mill, and this too was paid for by the issue of additional shares of stock. The stockholders were few in number and each owned but few shares. The entire enterprise seemed to be depend-

ent upon the experience and business ability of Adams, who not only became the president of the corporation, but upon him devolved, by the acquiescence and consent of everybody, almost the entire management and control of the business. A board of directors was formally elected and Edwin Metcalf, one of them, was made secretary and treasurer of the corporation. In the several years of the active existence of the corporation the board never met except on one or two occasions. Its members acquired no knowledge of its affairs and took no part in its direction or management, but passively permitted Adams and Metcalf to do as they chose and acquiesced in all that was done by them as if their actions had been done in accordance with formal corporate action taken by the board itself.

It has been found that the books displaying the business and financial standing of the corporation were badly kept and failed to show the true condition of the corporate business; that this was the result of lack of ability and care on the part of both Adams and Metcalf, but that both of them, in the matters referred to, were acting honestly and in good faith and had no intention to bring about the insolvency of the corporation or imperil in any way the rights of the corporate creditors. At the conclusion of the business year ending July 31, 1903, the books as kept and the statements taken therefrom showed a sufficient profit to justify a dividend to the stockholders, and the president, Adams, directed such distribution to be made and checks were accordingly issued by him and the treasurer to each stockholder for his proportionate share. Precisely the same thing occurred at the end of the following year, July, 1904, and again a distribution was made to each stockholder according to the number of shares held by him. Both of these distributions were received and acquiesced in by all of the stockholders, including of course those who were nominally members of the board of directors.

After a complete examination of the corporate books

and a restatement of the accounts, in so far as necessary to disclose the true financial condition of the company, the learned trial court has found that there was not in fact, at the time these dividends were paid, sufficient net profits to warrant such distributions. He further finds, however, that the corporation was not then insolvent, and that these improvident distributions resulted in some impairment of the existing capital, but had not yet necessarily imperiled the rights of the creditors.

About August 1, 1905, the active management of the corporation was turned over by Adams and Metcalf to two men named Smith and Moyer, who were to continue the business and were to pay into the treasurer of the company annually what would amount to six per cent on its outstanding stock. The arrangement or contract contained certain other provisions which are perhaps not now material to state, but no adequate provision was made for the payment or substantial reduction of the debts of the corporation which had then reached a considerable sum. For the years 1906 and 1907 Adams and Metcalf seem to have assumed that the money paid in by Smith and Moyer, under the arrangement stated, was properly applicable to dividends, and in each of said years it was so distributed. The learned court below finds that although these distributions, like the others, were made without any dishonest or fraudulent purpose or intent, they were made at a time when the corporation was actually insolvent, or that it became so by reason of these distributions. Later on the corporation was regularly adjudicated to be insolvent, and Louis M. Childs, the appellant, was appointed its receiver. He filed the present bill against Adams and Metcalf, first for the purpose of securing a correct accounting between the company and themselves as individual debtors or creditors of the corporation, and further for the purpose of obtaining a decree requiring them to refund to him, as receiver, the amounts of money which, as he alleges, they had unlawfully paid out to the stockholders in the dividends already referred to.

If the findings of fact of the learned judge below are correct, the first purpose stated has been satisfied by the decree which has been made, and this aspect of the case we need not further consider. As to the remaining purpose of the bill, the learned court held that the receiver had mistaken his remedy, and the prayers of the bill for the repayment or return of the four dividends referred to were dismissed without prejudice, etc. This portion of the decree raises the legal question involved in the case.

In considering it we may say at the outstart that the findings of the court that the defendants acted throughout honestly and in good faith, and were guilty at most but of inefficiency and carelessness, broadly distinguish this case from Kisterbock's Appeal, 51 Pa. 483; McCarty's Appeal, 110 Pa. 379, and kindred cases cited and relied on by the appellant. In Ahl v. Rhoads, 84 Pa. 319, this distinction was clearly pointed out, and it was there held that the liability of certain bank officers and directors for neglect and misfeasance in office, not involving any actual fraud, was the liability created by the acts of 1850 and 1867 relating to such subjects, and that the exclusive remedy therefor was that pointed out by those statutes. So in Mechanics' Building & Savings Association's Estate, 202 Pa. 589, the Supreme Court, adopting the language of Judge ENDLICH, said, "But even apart from these considerations, it is to be observed that the liability sought to be fastened upon the directors by the exceptants is not one predicated upon actual fraud, as in Kisterbock's Appeal, 51 Pa. 483, but upon constructive fraud, technical tort, which, according to Ahl v. Rhoads, 84 Pa. 319, cannot be used for the purpose here attempted to be accomplished."

In Miller Paper Co. v. York Coated Paper Co., 34 Pa. Superior Ct. 315, this court determined that the Act of July 18, 1863, P. L. (1864) 1102, had not been repealed by the general corporation act of 1874, except in so far as its provisions were supplied by the later act, or where the later had enacted provisions inconsistent with and repug-

nant to the earlier act. We further held that where the act of 1874 re-enacted those provisions of the act of 1863 prohibiting the doing of certain things by officers and directors of corporations and creating certain liabilities therefor, but failed to provide any remedy by which such liability could be enforced other than that contained in the earlier act, the sections of the earlier act providing such remedy remained in full force and effect and must be strictly followed. It would serve no purpose to repeat the reasoning and again cite the authorities which led us to the conclusion we there reached.

The very acts of the corporate officers complained of in this bill are precisely those forbidden by the act of 1863 and the later act of 1874. In both the extent and nature of the liability incurred, by officers and directors who do these forbidden acts, are clearly pointed out, and by the earlier act, in this respect still in force, a definite and adequate remedy to enforce such liability is provided. The learned court below but followed the authority of our former decision in refusing to make the decree prayed for.

We may note here that the liability of directors who declare or pay a dividend when their company is insolvent, or when such payment would render it insolvent, is not necessarily the return, either to the corporation or to its receiver, of the whole amount of the dividend thus wrongfully paid. In the language of the act, "they shall be jointly and severally liable for all the debts of the company then existing and for all thereafter contracted, so long as they respectively remain in office, provided that the amount for which they shall be liable shall not exceed the amount of such dividend," etc. Their liability then is not to the corporation or its receiver, but to the creditors who have suffered by their improvident act. But such creditor must first proceed to have the amount of his indebtedness adjudicated in an action against the corporation where the latter, of course, has a right to defend in whole or in part against the alleged claim. When his status as a creditor and the amount of his indebtedness

have thus been adjudicated, then he may file his bill for himself and other like creditors against the officers and directors who have violated the statute, and in such a proceeding the court could at once determine to what extent they had incurred the statutory liability and thus make a proper decree.

This conclusion in nowise militates against the principle declared in Cushing v. Perot, 175 Pa. 66, and State Bank of Pittsburg v. Kirk, 216 Pa. 452, that the receiver, generally speaking, represents not only the corporation but also its creditors, and that it is his duty to gather together all of the assets of the corporation.

We are unable to regard the liability of the officers and directors of a corporation, specially imposed by the statute, as an asset of the corporation within the meaning of that principle.   As was said in Lane's Appeal, 105 Pa. 49, "This liability is, of course, of a purely statutory character, having no existence outside of the legislation, and whenever it is invoked it must be enforced in the very manner prescribed by the other portions of the act.   If that kind of remedy is not literally pursued when that particular liability is proposed to be enforced, there can be no recovery.   Such were the decisions of this court in many cases, notably in Patterson v. Lane, 35 Pa. 275," etc.

The learned counsel for the appellant ingeniously argues that the distributions of money complained of in this case were not dividends because they were not formally declared by the board of directors and were not paid out of the net earnings or profits of the company.   This is only to argue, however, that there can be no dividend, legally speaking, except a proper and duly authorized one.   He therefore contends that, representing the corporation and its creditors, he now seeks but an accounting for the moneys of the company which were at one time in the custody and under the control of its president and treasurer, the present defendants.   If, he argues, these officers cannot show a duly authorized and legal disbursement of

these moneys, they are still in their hands as assets of the corporation, and their payment ought to be decreed to him as its receiver. But the very language of the acts of 1863 and 1874 designates exactly such payments as dividends, forbids the declaration or payment of them and fixes the liability therefor. They were in fact, as the court finds, distributions among the stockholders of what was mistakenly supposed to be net profits available for that purpose, and the distributions were made in accordance with the shares of stock held by each stockholder. They were thus dividends in fact, although not lawfully authorized, and they were declared and their payment was directed, not by the formal action of the board of directors de jure, but of the board de facto, which, by the acquiescence and consent of both stockholders and directors, performed all the functions of the board. The bill itself, upon which the proceeding is founded, recognizes these facts and declares that these officers paid out "as a dividend" the several sums referred to in the bill.

After a careful examination of the entire record and the able argument of counsel, both at bar and in his printed brief, we are of the opinion that the conclusion reached by the learned trial judge is abundantly supported, both on reason and authority, and the assignments of error must therefore be dismissed.

Decree affirmed.