In re DE SOTO COAL MINING & DEVELOPMENT CO.

(District Court, N. D. Alabama, S. D.   January 9, 1914.)

No. 12970.

CORPORATIONS (§ 471*)—BONDS—VALIDITY—CONSIDERATION.

Two stockholders of a corporation mutually agreed that the amount of the indebtedness of the corporation to them should be canceled, except as to the excess owed one over that owed the other, which was represented by a note of the corporation. The expressed object of the cancellation was to increase the value of the stock, which was all owned by the two creditors. Some time thereafter the corporation reinstated the indebtedness, which had been canceled in consideration of the payment of its outstanding debts by the two creditor stockholders, and bonds were issued to secure those debts, and the amount advanced to pay the other debts. After the corporation became bankrupt, the trustee under the mortgage securing the bonds petitioned for permission to foreclose. The trustee in bankruptcy objected, on the ground that the bonds had not been issued for money paid or property transferred to the corporation, as required by the Alabama Constitution. *Held*, that the bonds were valid under that provision, since the original cancellation of the indebtedness must be presumed to have created a surplus, which the corporation might have distributed to its stockholders, and the transaction can therefore be treated as one in which the surplus was distributed to the stockholders, who later advanced to the corporation an amount equal thereto.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1833–1836, 1838, 1840; Dec. Dig. § 471.*]

In Bankruptcy. Proceedings against the De Soto Coal Mining & Development Company. On petition of the trustee in bankruptcy to review an order of the referee declaring valid certain bonds of the bankrupt corporation. Petition for review denied.

Henry Fitts, Phares Coleman, and N. L. Steele, all of Birmingham, Ala., for petitioner.

John P. Tillman and Sterling A. Wood, both of Birmingham, Ala., opposed.

GRUBB, District Judge. This was a petition to review an order of the referee upon a petition, filed by the trustee under a mortgage securing an issue of bonds of the bankrupt corporation, to be allowed to foreclose the mortgage. The referee granted the petition. The trustee in bankruptcy objected to the allowance of the petition, upon the ground that the bonds secured by it are invalid, because issued in contravention of the Alabama Constitution and statute, prohibiting and making void all stock or bonds of a corporation not issued for money paid to, property transferred to, or labor done for, the corporation.

The bond issue was in the amount of $75,000. It is clear that of this issue all but $54,621.48 paid debts of the corporation, or reimbursed its officers for debts of the corporation paid with moneys advanced by them for that purpose. The question as to the validity of the bonds depends upon whether the $54,621.48, which were issued to E. L. Dosenbach and B. C. Stevens, were supported by money, property, or labor, the benefit of which the corporation secured.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The contention of the trustee in bankruptcy is that they were issued, without consideration moving to the corporation, to its stockholders, and traded by some of its stockholders (Stevens and D. A. Dosenbach) to others of its stockholders (E. L. Dosenbach and those he represented) in consideration of the transfer by the latter to the former of the capital stock that the latter owned in the corporation. If this was the transaction, it would be one obnoxious to the Constitution and statute of Alabama, as claimed by the trustee in bankruptcy.

The contention of the trustee under the mortgage is that at the time of the bond issue the corporation was indebted to Stevens and E. L. Dosenbach, two of its stockholders and directors, in the sum each of in excess of $27,000, and that that much of the bonds were issued to Stevens and Dosenbach to pay the indebtedness of the corporation to them, and that Stevens transferred his portion of the bonds to E. L. Dosenbach for the stock of the corporation owned by E. L. Dosenbach, or by those represented by him. If this contention is supported by the record, the validity of the bonds is to be sustained.

It is admitted that prior to October 31, 1906, the corporation owed Stevens $30,384.32 and E. L. Dosenbach $27,310.74 for moneys theretofore advanced by each to the corporation. Whether this indebtedness was outstanding in August, 1907, when the bonds were issued, depends upon the construction to be put upon certain acts of the corporation and its stockholders on that day and thereafter.

On October 31, 1906, a directors' meeting of the bankrupt corporation was held in St. Louis. The minutes of the meeting of that date show merely an authorization to its officers to execute a note of the corporation, payable to Stevens, in the sum of $3,073.58, representing the excess of moneys advanced to the corporation by Stevens over the amounts advanced to it by E. L. Dosenbach. The contention of the trustee in bankruptcy is that, prior to the directors' meeting, Stevens and Dosenbach agreed between themselves in favor of the corporation to mutually cancel an amount of the indebtedness of the corporation to them equal to the amount due by it to Dosenbach, and thus increase the value of their respective stockholdings by decreasing the corporation's indebtedness, to which it was subject in that amount; that the mutually agreed upon cancellation was later (January 10, 1907) effected by charging off on the books of the company the amounts due Stevens and E. L. Dosenbach in that amount, executing a note to Stevens for the excess, and reducing the account entitled "Lands, Leases, etc.," by the like amounts, so charged off, as debits.

The contention of the trustee under the mortgage is that there was no agreement by Stevens and by Dosenbach of mutual cancellation of any part of the amounts respectively due them, and that the note given Stevens by the corporation for the excess in the amount due him over that due Dosenbach was given him only to enable him to draw interest on the excess of his advances, and thus put him on an equality with Dosenbach, which would otherwise have been denied him in that respect.

The referee found this question of fact in favor of the trustee under the mortgage, and decided that it was entitled to the relief prayed for

on this ground. I do not find it necessary to the decision of the case to pass on this finding of fact.

It is conceded that before the bonds were issued there was an attempted reinstatement of the indebtedness on the corporation's books that had been theretofore canceled, as is claimed by the trustee in bankruptcy, probably done for the purpose of putting the corporation in a position where it could issue its bonds in payment of an existing indebtedness, and thus make them valid obligations of the corporation. This reinstatement was the unanimous act of the stockholders, and it was provided that all existing debts were to be paid by Stevens and D. A. Dosenbach, and they were, in fact, so paid, with the exception of the note given Stevens for the excess of moneys advanced by him, as before stated; and Stevens, of course, is estopped, as a creditor, to question the validity of the bonds, which were issued partly because of his act as a stockholder, director, and officer.

The trustee in bankruptcy contends that this attempted reinstatement of the alleged canceled indebtedness was a fraud on the law and a futile attempt to evade the prohibitions of the Alabama Constitution and statute against the creation of fictitious bonded indebtedness by corporations, and that the bonds were subject to this infirmity as to subsequent creditors, and so the unanimous consent of stockholders could not avail to validate the bonds supported by the reinstated indebtedness. It is true that if the effect of the reinstatement was to create a fictitious indebtedness, which alone supported the bond issue, then the bonds based upon it would be void, even as to subsequent creditors, who might have been misled in extending credit by the apparent, but unreal, capitalization of the corporation brought about by the fictitious bonds.

The question is whether the cancellation and subsequent restoration of the indebtedness from the corporation to Stevens and Dosenbach can be said, under the facts, to have created a fictitious indebtedness in the amount restored. It is not disputed that the original indebtedness was a bona fide one, and that the moneys represented by it were actually advanced the corporation, and went into its treasury in the full amount. Nor is it claimed at the time the indebtedness was written off in October, 1906, or in January, 1907, that the company's capital had been impaired to that extent by losses. The expressed purpose of the writing off of the indebtedness was that it would, in an equal amount, increase the value of the stock, which was all owned by Stevens and Dosenbach, and not that it was done to replace any previous impairment of capitalization. It will therefore be presumed that at the time the indebtedness was written off there was an excess of assets over capitalization equal to the amount of the indebtedness then written off. In other words, that the writing off of this indebtedness without consideration moving from the corporation for its cancellation left it assets in amount at least equal to the amount of the canceled indebtedness, in excess of its obligations and capital stock liability. The record does not show that there was any impairment of capital between the canceling of this indebtedness and the issuance of the bonds. At the time of the issuance of the bonds, therefore, the company's assets exceeded its liabilities, including

its capital stock, in a sum at least equal to the alleged canceled indebtedness.

No question is made in the record as to full and proper payment of the original capital stock subscription. The question then is whether the reinstatement of the canceled indebtedness, under these circumstances, can, as to future creditors, be held to be the creation of a fictitious indebtedness. The full amount of money, which the indebtedness represented, had been concededly contributed to the treasury of the company, still remained there, and was not represented by the original capitalization of the corporation or by any of its then outstanding obligations. It was, therefore, in the nature of a surplus over and above the liability of the corporation to its creditors or on capital stock account. Being a surplus, it would have been competent for the corporation to have distributed it among the shareholders. It would then have been competent for the shareholders to have loaned it back to the company and taken the company's obligations of indebtedness for it. Under the reservation of the Supreme Court of Alabama, in the case of Fitzpatrick v. Dispatch Pub. Co., 83 Ala. 604–607, 2 South. 727–729, that "we have not decided, nor need we declare, what would be our ruling, if it were shown that the Dispatch Publishing Company had an accumulated money surplus, or visible, tangible property in excess of its authorized stock, and proposed to make that the basis of additional stock to be issued," it is probable the surplus could have been distributed among the shareholders in the way of a stock dividend. The conceded fact that the amount of the canceled indebtedness went into the treasury of the corporation, remained there until the original indebtedness was reinstated, and was not until then represented either by evidences of debt or capital obligations of the corporation, shows that an increase of corporate obligation in the same amount, whether of capital or indebtedness, based upon it would be in no sense fictitious.

The fictitious indebtedness of capitalization prohibited by the Constitution and statute is one which has no representation in the assets of the corporation, such as subsequent creditors dealing with the corporation would have the right to rely upon. If it was competent for the corporation to distribute the surplus created by the cancellation of the indebtedness in cash or stock dividends, without incurring liability under the Constitution and statute, it was equally competent for it, with the consent of all its stockholders; it having no existing creditors unprovided for in full, to permit the fund to remain in its treasury and issue evidences of its indebtedness to whom it saw fit in an equal amount. This is what it did at the time of the bond issue, by reinstating the indebtedness in favor of Stevens and E. L. Dosenbach on its books. No fictitious increase of capital or indebtedness was thereby created, for this amount was free assets in the sense that it was unrepresented theretofore either by the corporation's capitalization or by its obligations of indebtedness. After reinstatement of the indebtedness, the outstanding obligations of the corporation, both on account of debt and of capital stock, would only equal its actual assets.

If the indebtedness was legally reinstated, it follows, so far as the rights of future creditors are concerned, and there were no existing

creditors, that the corporation with the unanimous consent of its stockholders could issue its bonds secured by mortgage, and deliver them to Stevens and E. L. Dosenbach, in liquidation of the then existing indebtedness of the corporation to them. The case of First National Bank v. Winchester, 119 Ala. 168, 24 South. 351, 72 Am. St. Rep. 904, is authority for this conclusion.

The petition for review is denied, and the trustee in bankruptcy taxed with the costs of the petition.