# Stony Brook Lumber Co., Appellant, *v.* Blackman et al.

*Corporations—Corporate entity—Fiction—Stockholders — Liability for debts—Sale of corporate property—Acquiescence—Ratification—Setting up own wrong—Laches.*

1. Where all the stockholders of a private corporation consent, and there are no creditors, the officers of the company may dispose of its property as they see fit.

2. Where one person is the sole owner of the stock of a corporation, he may, in the absence of creditors, dispose of the corporate property as pleases him.

3. While a corporation, as distinguished· from its stockholders, is, in law, a distinct entity, equity will, in an appropriate case, and in furtherance of the ends of justice, treat as identical the corporation and the individual or individuals owning all its stock and assets.

4. Where two individual stockholders sell all their holdings to a third stockholder, who owned all the rest of the shares except two held by his wife, and it appears that the sale was without fraud, and that the sellers retired when all the company's liabilities had been paid, and that they had nothing to do with the subsequent financing of the company by the purchaser of their shares, they cannot be held liable to the corporation in a suit brought by it several years afterwards, and after the purchaser's stock had passed to another person with full knowledge of defendants' sale of their stock.

5. In such case, if the original purchaser of the stock committed a wrong, neither he nor the purchaser of the stock from him can set up the wrong as against the defendants; nor is it material that, when the suit was brought, the wife of the original purchaser still owned two shares.

6. Long acquiescence by stockholders may amount to ratification.

7. The question of laches was not considered.

Argued April 13, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 140, Jan. T., 1926, by plaintiff, from decree of C. P. Luzerne Co., Oct. T., 1921, No. 3, dismissing bill in equity, in case of Stony Brook Lumber Co. v.

John Hughes Blackman and John C. Hughes. Affirmed.

Bill for accounting.   Before McLEAN, J.
The opinion of the Supreme Court states the facts
Bill dismissed.   Plaintiff appealed.

*Error assigned* was, inter alia, decree, quoting it.

*G. J. Clark,* for appellant.—The plaintiff is the corporation and estoppel by acts of stockholders must be proved as a defense.   The facts do not sustain the defense: Cheat Val. R. R. v. Humes, 211 Pa. 287; Russell v. Patterson, 232 Pa. 113; Lowman v. Pierce Co., 276 Pa. 382.

Form of a check was notice that corporate funds were being used to pay the individual debt and sufficient to put trust company on inquiry: Cochran v. Bank, 209 Pa. 34.

A purchaser with notice that the sale is a breach of trust or a fraud on the rights of the real owner is particeps criminis with the fraudulent vendor, and his purchase cannot protect him against the owner because such a purchase is not bona fide: Garrad v. R. R., 29 Pa. 154; Trefts v. King, 18 Pa. 157; Sergeant v. Ingersoll, 15 Pa. 343; Keystone Guard v. Beaman, 264 Pa. 397; Schmitt v. T. & T. Co., 61 Pa. Superior Ct. 301; Russell v. The Church, 65 Pa. 9.

*F. W. Wheaton,* with him *P. F. O'Neill,* for appellees. —There were insufficient corporate moneys to pay the corporate debts, and Carter raised sufficient moneys to add to what the corporation had and pay off all the corporate debts.

This was a direct benefit to the corporation, accepted by it with no attempt to repudiate the transaction until six years afterward, when this bill was filed: Presbyterian Board v. Gilbee, 212 Pa. 310, 314; Lemmon v.

Rubber Co., 260 Pa. 28, 33; Hamaker, Exr., v. Farmers Assn., 271 Pa. 465.

Where corporate officers exceed their authority or disobey their instructions in any matter of detail, the corporation is bound to elect, within a reasonable time after knowledge, whether it will repudiate or ratify the transaction: Kinter v. Trust Co., 274 Pa. 436; Patton v. Trust Co., 276 Pa. 95.

OPINION BY MR. JUSTICE WALLING, May 3, 1926:

The plaintiff, Stony Brook Lumber Company, a corporation chartered in 1910, was located in Sullivan County, with an authorized capital stock of $200,000, divided into shares of $100 each, of which 1,500 were issued. The defendants, Blackman and Hughes, were respectively president and treasurer of the corporation and Frank E. Carter was vice-president and general manager of production, from its organization until August, 1915. They were also the directors of the corporation, the original by-laws limiting the number to three. Defendants owned eleven hundred shares of the outstanding stock and Carter the remaining four hundred shares, except two shares thereof which stood in the name of his wife. In May, 1915, defendants gave Carter a written option on their stock, by the terms of which they were to receive approximately $48,000 for the stock and $6,000 for salary due Blackman; while Carter was to pay all the corporation's direct and contingent liabilites, amounting to some $37,000. The option as drawn expired July 15, 1915, but was extended to August 4th. It was a hard struggle for Carter to raise the necessary $91,000, but he finally succeeded and on August 2d the parties, including the defendants, also Carter and those assisting him to raise the money, met in the directors' room of the Miners Savings Bank at Pittston to close the deal. A bank teller named Wilson was called in to handle the cash, checks, etc., in fact to act as a clearing house in the transaction. The trial court

refused to find Wilson was acting as agent for Black-
man, but under the evidence it may be assumed he acted
for both Carter and Blackman. A Mr. Ruggles, repre-
senting a bank, raised some objection and the matter
was passed to August 4th, when the parties met again
in the same room and Wilson produced the checks,
money, etc., which he had kept in escrow and the trans-
action was closed by delivery of the stock to Carter and
by his payment of the $54,000 to defendants and all
debts and liabilities of the corporation. Meantime, on
August 2d, at a special corporate meeting, defendants
had resigned their offices as president, treasurer and di-
rectors, the vacancies at the same time being filled by
electing Carter president and his friends to the other
offices, the directors being increased from three to five.
The transfer, however, was tentative until August
4th. Carter died the following November and the
plaintiff corporation ceased doing business practically
at the same time. In some unexplained manner,
John G. Scouton acquired the Carter stock, became
president of the corporation and on August 1, 1921,
practically six years after defendants sold their stock,
caused the filing of this bill against them for an account-
ing, averring, inter alia, that they unlawfully received
corporate property in payment for their stock. This was
denied, and after a full trial, the lower court made find-
ings of facts and legal conclusions favorable to defend-
ants and in due course entered a final decree dismissing
the bill; therefrom plaintiff brought this appeal.

The record discloses no cause for reversal. There was
neither proof nor finding of any fraud on part of de-
fendants, nor of any collusion between them and Carter.
The sale of their stock was a straightforward business
transaction and they had nothing to do with its financ-
ing by Carter, or with the corporation notes or property
he gave to assist in raising the money. Their connec-
tion with the corporation had ended and they retired
when all its liabilities were paid. True, they could not

retire from the corporation and carry away its assets to the prejudice of creditors or nonconsenting stockholders, but nothing of that kind occurred. The parties received what they were entitled to under the option agreement and all corporate liabilities were paid. Furthermore, on August 4th, Carter was the sole stockholder, except for the two shares held by his wife, to which we will refer; every debt was paid and there was no public interest involved. Therefore the rule applies that, "Where all the stockholders consent and there are no creditors, the officers may dispose of the property of a private corporation as they see fit": 2 Fletcher, Cyc. of Corp., par. 1203, p. 2154. It is found as a fact that Carter did not pledge the corporation for more than sufficient to liquidate its existing liabilities; but, if otherwise, who could complain? Certainly he could not, of his own act. If any wrong was done, which we do not assert, it was done by Carter, and he would be estopped from setting up his own wrong for his own gain, and Scouton, who thereafter acquired Carter's stock, is in no better position. He attended the meeting of August 2, 1915, where he was chosen a director under Carter and acted as such; he was also present on August 4th and there loaned the corporation $5,000 to help finance the deal and received its note for the same (see Scouton v. Stony Brook Lumber Co., 261 Pa. 241); so he took the stock charged with all Carter had done and with full knowledge of the facts. Again, Carter as sole owner of the stock could in the absence of creditors dispose of the corporate property as pleased him. "If all the stockholders of a corporation consent, and it is not detrimental to creditors, officers may appropriate corporate assets. It follows that if there are no stockholders except the directors and officers, the latter may, of course, by unanimous consent, give away corporate property, where the rights of creditors are not impaired": 2 Fletcher, Cyc. of Corp., par. 2507, p. 3753. We are aware that a corporation has an entity distinct from that of its stock-

holders; this separate personality equity will disregard if necessary to do substantial justice. In S. G. V. Co. v. S. G. V. Co., 264 Pa. 265, 269, we say: "It is well stated by Judge ENDLICH, in Kendall v. Klapperthal Co., 202 Pa. 596, 607, affirmed by this court, that equity looks to the substance of the transaction, not to its mere form or color, and 'a corporation does not lose its legally distinct and separate personality by reason of the ownership of the bulk or the whole of its stock by another,......nor by its joining hands with another in a common enterprise. But it is well understood that for purposes of equity, courts will look behind that artificial personality, and, if need be, ignore it altogether, and deal with the individuals who constitute the corporation'"; and such is the general rule. 7 R. C. L. p. 27 states: "The doctrine, however, that a corporation is a legal entity existing separate and apart from the persons composing it is a mere fiction, introduced for purposes of convenience and to subserve the ends of justice. This fiction cannot be urged to an extent and purpose not within its reason and policy, and it has been held that, in an appropriate case, and in furtherance of the ends of justice, a corporation and the individual or individuals owning all its stock and assets will be treated as identical." To like effect is C. S. Goss & Co. v. Goss, 132 N. Y. Supp. 76, 79; 1 Morawetz on Private Corporations, par. 1.

As to Mrs. Carter, it may be sufficient to say she has never complained about her two shares of stock. She did not authorize this suit and is no party to it. She cannot be treated as a dissenting stockholder, whatever the rights of such a one might be. Considering her relation to Mr. Carter, her silence of ten years may be treated as an implied ratification of his act. See Trefts v. King, 18 Pa. 157. Long acquiescence by stockholders may amount to a ratification: 14a C. J. p. 102. Her stock cannot now, without her consent, be used to bolster up a cause devoid of equity. The defendants owe

the corporation nothing and there is no reason for an accounting.

This is a stale case, but as the question of laches was not pressed, we express no opinion thereon.

The decree is affirmed and the appeal dismissed at the cost of appellant.