Bradford County Telephone Company et al.,
Appellants, *v.* Young, Admr., et al.

Argued January 24, 1938.   Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*William M. Rosenfield,* with him *Donald M. Johnson,* for appellants.

*J. Roy Lilley,* with him *William P. Wilson* and *Joseph W. Beaman,* for appellees.

OPINION BY MR. JUSTICE STERN, March 21, 1938:

Bradford County Telephone Company, which owns and operates a telephone system in Bradford County, was incorporated in 1901. Subsequently it accepted, and became subject to, the provisions of the Act of July 22, 1919, P. L. 1123, for the regulation of telephone companies. From 1915 on, Martin H. Murphy was the registered owner of all its capital stock, but under date of October 4, 1928, he gave to Jerome K. Packard, who was the manager of the company, a written statement acknowledging that Packard was the owner of a one-half interest, and that Murphy held the stock in trust for him to that extent. At that time negotiations were in contemplation with the Bell Telephone Company of Pennsylvania to acquire its properties in certain portions of Bradford County, and, with the consummation of that transaction in view, Packard and Murphy entered into a written agreement, dated October 20, 1928, wherein Packard agreed "to transfer over to said Murphy his entire stock ownership, or to quit-claim to him all his right, title and interest in and to the Bradford County Telephone Company," in consideration of the payment to Packard of $5,000 in cash and $30,000 of mortgage bonds of a company which it was intended should be formed as a result of the purchase of the properties, the mortgage of $30,000 to be subject to a first mortgage of

$100,000. The agreement was conditioned upon the new company being organized within six months, but the transaction took another form; instead of a new company being formed, the Bradford County Company paid for the properties partly with cash realized from the negotiation of a first mortgage of $100,000, and partly by the issuance to the Bell Company of a certain number of shares of the Bradford Company out of an authorized increase of its capital stock. The execution of two mortgages of $100,000 and $30,000, respectively, on the property of the Bradford Company was duly authorized at meetings of its board of directors and stockholders, and the company then executed and delivered to Packard three notes, each in the sum of $10,000, dated November 1, 1929, payable November 1, 1960, with interest at 6% per annum, secured by the second mortgage of $30,000.

In 1935 Andrew J. Sordoni purchased all the stock of the Bradford Company, and shortly thereafter filed, together with the company itself as joint plaintiff, a bill in equity against the administrator and the heirs of the Estate of Jerome K. Packard, who had died in 1930, alleging that the notes and the $30,000 mortgage, all of which were still in the ownership and possession of the Estate, had been delivered by the company to Packard without consideration and were therefore illegal and void, and praying for a decree that the notes be surrendered and cancelled and the mortgage satisfied of record. Defendants filed an answer and testimony was taken; the court entered a decree dismissing the bill, from which plaintiffs appeal.

The principal controversy in the pleadings and evidence centered around two questions: (1) Were the notes and mortgage executed without value having been received by the company? (2) When Sordoni acquired the company's stock did he have knowledge of the facts attending their issuance? As to the first question, the court found that the company did receive consideration;

as to the second, that while Sordoni knew that the notes and mortgage were outstanding, he had no information as to the facts upon which he now seeks to support his contention of illegality.

If this Court were required to review the findings made by the court in reference to the first question, it could discover much justification for a conclusion that they are not only without support in the record but contrary to all the testimony in the case. The agreement of October 20, 1928, between Murphy and Packard shows clearly that Packard was selling his interest in the stock, not to the company, but to Murphy. The agreement was carried out in substance, notwithstanding the change in detail as to the incorporation of a new company, and Murphy himself paid the $5,000 cash which was part of the purchase price. None of the company's stock was placed in the treasury of the company, and none was surrendered or cancelled. The only effect of the transaction was that Packard's beneficial interest was quit-claimed to Murphy, who thus became the sole beneficial, as he had theretofore been the sole legal, owner of the stock. These facts appear from the documents admitted in evidence, the books of the company, the reports filed with the Public Service Commission, and the oral testimony of the witnesses. However, the factual issues in the litigation must here yield to the paramount question as to whether Sordoni and the company are parties who have the right to vindicate the law as to the alleged illegality of the securities which the company issued.

Article XVI, section 7, of the Constitution provides that "No corporation shall issue stock or bonds except for money, labor done, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void." This provision is not self-executing: *Yetter v. Delaware Valley R. R. Co.,* 206 Pa. 485; *Grange National Bank v. Collman,* 306 Pa. 200. Several acts have been passed to implement it, notably the Act

of April 29, 1874, P. L. 73, sections 17, 18, amended by the Act of April 17, 1876, P. L. 30, section 4; the Act of May 7, 1887, P. L. 94; the Act of July 26, 1913, P. L. 1374, Art. III, section 4, Art. V, section 14, Art. VI, sections 33, 34, 37, amended by the Act of June 3, 1933, P. L. 1526, section 4, and the Act of May 28, 1937, P. L. 1053, Art. VI, Art. IX, sections 902, 903, 904, Art. XIII, section 1304.

It is not necessary for present purposes to discuss, much less decide, whether, apart from these statutes, the relief sought can properly be obtained by these plaintiffs; whether the company itself, having issued the securities which it now contends are illegal is barred from seeking the assistance of a court of equity to nullify its apparent obligations;[1] whether Sordoni can assert any greater rights than could those who owned the stock at the time of the transaction complained of and from whom, directly or indirectly, he acquired it;[2] whether the execution of the notes and mortgage was valid in view of the fact that Murphy was then the owner of all the stock and apparently there were no creditors;[3] whether the rights of the plaintiffs are affected by the identity, in equity, of the company and Sordoni as its sole stockholder.[4]

These questions, however interesting, are of no present moment in view of the decision in *Yetter v. Delaware Valley R. R. Co.,* supra. In that case a bill in equity was filed by stockholders of a railroad company seeking, inter alia, to have an issue of the company's stock declared invalid. The Act of May 7, 1887, P. L. 94, provided, in support of the constitutional prohibition, that, upon complaint that a railroad company was

---

[1] *Spangler Brewing Co. v. McHenry,* 242 Pa. 522.

[2] Fletcher, Cyc. Corp., Vol. 13, p. 185, sec. 5866.

[3] *Mann v. Mann,* 57 N. D. 550, 223 N. W. 186.

[4] *Stony Brook Lumber Co. v. Blackman,* 286 Pa. 305, 310; *Waring v. WDAS Broadcasting Station, Inc.,* 327 Pa. 433, 442.

about to issue, or had issued, stock or bonds in contravention of the provisions of the act or of section 7, Article XVI of the Constitution, "it shall be the duty of the . . . attorney general . . . to institute proper proceedings at law, or in equity, or both, in the name of the commonwealth, to enforce the provisions of this act. . . ." This Court held that no remedy for the violation of the act could be pursued other than the one designated in the act itself, because the Act of March 21, 1809, 4 Sm. L. 326, section 13, provides that "in all cases where a remedy is provided or duty enjoined, or any thing directed to be done by any act or acts of Assembly of this commonwealth, the directions of the said acts shall be strictly pursued." Accordingly it was held that the plaintiffs had no standing to attack the legality of the issuance of the stock, and their bill was dismissed.

In the present case Bradford County Telephone Company, being a public service company, was subject to the provisions of the Act of July 26, 1913, P. L. 1374, which was in force when the securities here involved were issued and when the present suit in equity was instituted. Several sections of that act implemented the constitutional mandate. Article III, section 4(a), provided that it is "lawful for any public service company—To issue . . . bonds, notes . . ., or other securities, or make any increase in the issue thereof, . . . for and only for money, labor done, or money or property actually received," and that all securities issued in violation of this provision and "all fictitious increase of . . . securities" shall be void. Article V, section 14, provided that the Public Service Commission should have the power to determine whether any public service company had issued, or made any increase in the issue of, securities in violation of the provisions of the act, and, if so, should certify such "finding to the Attorney General to institute, in the name of the Commonwealth, such proceedings in equity or law, civil or criminal, as shall be necessary or proper to enforce the provisions of this

act." Article VI, section 33, provided that whenever the Public Service Commission should be of opinion that any public service company had done or was about to do anything prohibited or declared in the act to be unlawful, it might institute in the name of the commission appropriate legal proceedings to restrain such violations of the act and to enforce obedience thereto. Article VI, section 34, provided that "The Attorney General . . . shall . . . upon request of the commission or of his own motion, proceed, in the name of the Commonwealth," by "appropriate remedy at law or in equity, to restrain violations of the provisions of this act, . . . or to enforce obedience thereto." The Act of 1913 was repealed by the Act of May 28, 1937, P. L. 1053, but the latter provides, Article XIV, sec. 1405, that no prior transactions shall be affected thereby, but shall be enforced and prosecuted as fully and to the same extent as if the new act had not been passed, and it contains provisions, similar to those in the Act of 1913, for enforcement of the law by the Pennsylvania Public Utility Commission and the Attorney General. We have a situation, therefore, practically identical with that in the *Yetter* case, and for the reasons there stated it must here again be affirmed that only the Pennsylvania Public Utility Commission or the Attorney General can institute proceedings to have securities of a public service company judicially invalidated on the ground that they were illegally issued. Of course this principle does not prevent such a corporation, or any other, under proper circumstances, in an action brought *against it* to recover payment of its bonds or mortgage, from *defending* on the ground that the securities were issued in violation of law: *Shellenberger v. Altoona & Philipsburg Connecting R. R. Co.*, 212 Pa. 413; *Gearhart v. Standard Steel Car Co.*, 223 Pa. 385; *Guarantee Title & Trust Co. v. Dilworth Coal Co.*, 235 Pa. 594.

The decree of the court below is affirmed at the cost of appellants, but without prejudice to any proceedings

that may be instituted by the Pennsylvania Public Utility Commission or the Attorney General in regard to the subject matter of the present suit.