## Young, Adm'r, *v.* Bradford County Telephone Company, Appellant.

Argued January 29, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*William M. Rosenfield,* with him *Owlett & Webb,* for appellant.

*J. Roy Lilley,* with him *Joseph W. Beaman* and *William P. Wilson,* for appellee.

OPINION BY MR. JUSTICE STERN, March 24, 1941:

The Bradford County Telephone Company executed and delivered to Jerome K. Packard three notes, each in the sum of $10,000, dated November 1, 1929, payable November 1, 1960, with interest at six per cent per annum, secured by a mortgage of $30,000 on the company's plant and equipment, subject to a first mortgage of $100,000. Packard died in 1930. In 1936 the company brought a bill in equity against the administrator of his estate, alleging that the notes and mortgage were without consideration and therefore illegal and void, and praying for a decree that the notes be surrendered and cancelled and the mortgage satisfied of record. The cause came to this court on appeal *(Bradford County Telephone Co. v. Young, Administrator,* 329 Pa. 433, 198 A. 96) and the decree of the court below dismissing

the bill was affirmed for the reason that proceedings to have securities of a public service company judicially invalidated can be instituted only by the Public Utility Commission or the Attorney General. It was pointed out, however, that, if an action to enforce payment of the notes or mortgage were brought, the company would have the right to resist liability on the ground that the securities were issued in violation of law. The administrator then brought the present action to foreclose the mortgage. The company, in defense, asserted that the notes and mortgage were not issued for money or property actually received, and were void under Article XVI, section 7, of the Constitution of Pennsylvania and the Public Service Company Law of July 26, 1913, P. L. 1374, Article III, section 4 (a). Trial was had and the question submitted to the jury whether the company had received any property by way of consideration. A verdict was rendered in favor of plaintiff. Defendant appeals from a refusal of its motions for judgment n. o. v. and for a new trial. As to the latter, it is alleged that the learned trial judge committed errors in the reception and exclusion of evidence and in his charge to the jury. Because of the conclusion we have reached in regard to more general aspects of the case, it will not be necessary for us to pass upon the merits of these complaints in detail.

Martin H. Murphy was the registered owner of all the stock of the company, but held a half interest in trust for Packard. In contemplation of the acquisition by the company of certain properties of the Bell Telephone Company of Pennsylvania, Packard and Murphy entered into a written agreement dated October 20, 1928, wherein Packard agreed "to transfer over to said Murphy his entire stock ownership, or to quit-claim to him all his right, title and interest in and to the Bradford County Telephone Company," in consideration of the payment to Packard of $5,000 in cash and $30,000 of second mortgage bonds of a company which it was intended should be organized. The proposed company was

not formed and the plan was somewhat modified, the Bradford Company paying for the properties obtained from the Bell Company with cash realized from the negotiation of a first mortgage of $100,000 and by issuing to the Bell Company a certain number of shares of the Bradford Company out of an authorized increase of its capital stock. The execution of the $30,000 mortgage was duly authorized at a meeting of the board of directors of the Bradford Company, and the company's notes and a mortgage in that amount were delivered to Packard. Murphy paid to Packard the $5,000 cash provided for in the agreement as part of the purchase price of his interest. The certificates representing the capital stock which stood in Murphy's name had been pledged by Murphy many years before as security for a loan, and so remained until several years later when all the stock of the Bradford Company was purchased by Andrew J. Sordoni. None of the stock was ever assigned or transferred to the Bradford Company or recorded on its books as treasury stock acquired or owned by it.

The Constitution of Pennsylvania forbids the issuance of bonds by a corporation except for labor done or money or property *actually received*. There is no evidence in the present record from which a jury could properly find that the Bradford Company actually received Packard's interest in the stock of the company as consideration for the notes and mortgage. The case is plainly that of one stockholder buying out the holdings of another,—a transaction which did not increase the assets of the company and from which it derived no benefit. The agreement between Murphy and Packard stated as its purpose that Murphy should become the sole owner of the company, and it was to Murphy that Packard agreed to transfer his interest. No actual transfer was made, because all the stock already stood in Murphy's name; he continued as the registered holder, and thereafter as the sole beneficial owner, and ultimately sold the stock, he, not the company, receiving the proceeds. While a resolution of the board of directors

authorized the delivery to Packard of its bond and mortgage in the sum of $30,000 "in full payment, discharge and satisfaction for all of his interest in the company," this did not indicate that it was the company which was acquiring Packard's interest. What it was in fact doing was making part payment to Packard for the stock which Murphy purchased, Murphy himself paying the $5,000 which was the remaining part of the consideration. It is true that the vice-president, in a later letter to the Board of Accounts and Statistics of the Public Service Commission, stated that the purchase of Packard's interest was "by the company," that "This interest was not turned over to Murphy" (which was manifestly untrue), and that "The Packard interest was released by and for the company. Murphy negotiated for the company." He also testified, however, that these statements were made by him because he "had to say something so they [the Public Service Commission] would keep quiet," and they are not borne out by the facts of the transaction as it actually occurred, or by the books of the company, which represent the notes as having been issued, not for the purchase of Packard's interest in the stock, but as a "dividend from surplus."

If the notes were issued without a consideration "actually received" by the company, they were void under Article XVI, section 7, of the Constitution and the Public Service Law of 1913 then in force. Nor would the corporation be estopped to assert such invalidity merely because for several years it paid interest on the notes *(Wright's Appeal,* 99 Pa. 425, 432, 433), or because of any implied representation as to the legality of the transaction. Packard was conversant with all the facts and must be presumed to have known that the law would not permit the corporation to issue securities under such circumstances.

While, therefore, we are of opinion that there was not sufficient evidence to submit to the jury that the

company purchased and received Packard's interest in return for the notes and mortgage, there *is* evidence in the record which would seem to establish their legality on a different theory. It would appear from the report of the company made to the Public Service Commission for the calendar year 1929, and from the books of the company as well, that at the beginning of that year it had a surplus or credit balance of $42,810.84, which was increased by income amounting to $7,023.59, making a total of $49,834.43, and this surplus was stated to have been reduced by "dividends from surplus" amounting to $45,000 and an item of $116 for "material lost," leaving a net surplus at the end of the year of $4,718.43. The $45,000 "dividends" comprised the $30,000 of notes, and $15,000 additional stock issued to Murphy which is not involved in the present litigation. If there was in fact such a surplus it could legally have been distributed as a dividend, and it was not necessary, if all the shareholders agreed, that there should have been a formal declaration thereof: *Powers-Buchanan Co. v. Powers,* 269 Pa. 388, 390, 112 A. 541, 542; *Childs v. Adams,* 43 Pa. Superior Ct. 239, 247, 248. Notwithstanding the constitutional and statutory prohibitions against the issuance of stocks or bonds except for money or property actually received, a corporation may issue such securities as a dividend out of surplus, since, theoretically, it could distribute the surplus to its stockholders in cash or kind and then borrow it back and give them in exchange its obligations of indebtedness: *In re DeSoto Coal Mining & Development Co.,* 218 Fed. 892; *Mann v. Mann,* 57 N. Dak. 550, 223 N. W. 186. Defendant contends that the notes could not have been issued to Packard as a dividend since he was not a registered stockholder, but, whether regarded as a dividend or otherwise, they were valid instruments if charged against an actual credit balance. Where no rights of creditors are impaired, assets constituting a surplus may be distributed to whomsoever and in what-

ever manner agreed to by the shareholders. At the time when the board of directors authorized the execution and delivery of the notes and mortgage to Packard, Murphy was the sole stockholder, except for four qualifying shares of which presumably he also was the real owner. Since there were then no creditors of the company to be affected by the transaction, and all parties in interest acquiesced, the corporation could legally dispose of its surplus, or its bonds or notes representing the surplus, to Murphy, Packard or anyone else: *Stony Brook Lumber Co. v. Blackman*, 286 Pa. 305, 309, 133 A. 556, 557; *Mount Union Borough v. Kunz*, 290 Pa. 356, 360, 139 A. 118, 120; *Oliver v. Safe Deposit & Title Guaranty Co.*, 315 Pa. 552, 557, 173 A. 281, 283; *Edirose Silk Manufacturing Co. v. First National Bank & Trust Co.*, 338 Pa. 139, 12 A. 2d 40.

This case was tried by plaintiff on the theory that the notes and mortgage were given by the company in payment of Packard's interest in the stock. We are aware of the general rule, many times reiterated by this court, that a case will not be reviewed on appeal on a theory different from that upon which it was presented to the court below. Here, however, there is testimony in regard to the existence of a surplus which, if true, would apparently justify the issuance of the notes and the execution of the mortgage to Packard, and with such evidence staring at us from the record we feel that it would be a grave injustice to the Packard estate to deprive it of the $30,000 which he was to receive, and thought he did receive, for his interest in the company,—an interest which can no longer be recouped by his estate. A new trial will enable this aspect of the case to be developed, and will afford an opportunity to determine the question whether the company actually had a bona fide surplus at the time it executed and delivered its notes and mortgage to Packard.

Judgment reversed and a new trial granted.