## In re Dissolution of New Oxford Shoe Company

54

56

58

*Charles W. Wolf* and *Keith, Bigham & Markley*, for exceptants.

*Edwin M. Buchen* and *E. V. Bulleit*, contra.

SHEELY, P. J., February 28, 1942.—We have before us for disposition six exceptions filed by The J. S. Young Company to the findings of fact, conclusions of law, and decree nisi filed on August 22, 1941. . . .

The first exception is to the fourth conclusion of law in which the court concluded that article XVI, sec. 7, of the Constitution of Pennsylvania is not self-executing, and that since the Business Corporation Law of May 5, 1933, P. L. 364, there has been no statute implementing the constitutional provision with relation to indebtedness of a corporation.

That article XVI, sec. 7, of the Constitution is not self-executing has been specifically decided by the Supreme Court of Pennsylvania: Yetter v. Delaware Valley Railroad Co., 206 Pa. 485 (1903) ; Grange National Bank, etc., v. Collman, 306 Pa. 200 (1932) ; Bradford County Telephone Co. et al. v. Young, Admr., et al., 329 Pa. 433, 436 (1938). Whether we would have reached that conclusion ourselves is beside the point; we are bound by the Supreme Court's determination and, if the rule is to be changed, it must be done by that tribunal.

Prior to the Business Corporation Law of May 5, 1933, P. L. 364, the constitutional provision was implemented by section 17 of the Act of April 29, 1874, P. L. 73, as amended by the Act of April 17, 1876, P. L. 30, 15 PS §131. These acts were specifically repealed by the Business Corporation Law and that act made no provision that a fictitious increase of indebtedness should be void. Therefore, since the Business Corporation Law of May 5, 1933, P. L. 364, there has been no statute implementing the constitutional provision with relation to indebtedness of a business corporation. The first exception is accordingly dismissed.

The third exception and the two parts of the fourth exception are to the allowance of the claim of the Hanover Savings Fund Society, and the decree of court entered in pursuance thereof. The correctness of the conclusions excepted to, and of the decree, depends upon the correctness of the fifth conclusion of law, which is the subject of the second exception. The chancellor concluded that "the execution of a renewal note on January 23, 1938, by the corporation and the cancellation of the last previous instrument and extension of time for the payment of the debt by Hanover Savings Fund Society renders the corporation liable upon the note dated January 23, 1938."

In reaching that conclusion, the court relied upon Strauss v. W. H. Strauss & Co., Inc., 330 Pa. 517 (1938), in which the facts were substantially the same as the facts of this case. There, the corporation was an accommodation endorser of a note for the benefit of one of its two stockholders (the actual endorsement being made by the other stockholder). The original note was dated March 10, 1931, but the latest renewal was dated March 12, 1934. It was held that, although the original endorsement was an ultra vires act of the corporation, the defense of ultra vires was abolished by the Business Corporation Law of 1933 and, since the note had been renewed after the effective date of that act, the corporation was liable thereon. Under the authority of that case the present claim must be allowed unless the provisions of article XVI, sec. 7, of the Constitution, which were not there considered, require a different conclusion.

The Business Corporation Law of 1933 not only abolished the defense of ultra vires; it also repealed and failed to reënact the provisions of the Act of 1874 which implemented the constitutional provision by providing that a fictitious increase of indebtedness should be void. If the present case had arisen prior to the effective date of that act, or if the claim of the Savings Fund Society were based on an obligation created prior to that date,

the claim would be disallowed. But, as in the Strauss case, the claim is based upon an obligation created after the defense of ultra vires had been abolished and after the prohibition of fictitious increases of indebtedness had been removed.

It is contended that the chancellor erred in relying upon the statement of the Superior Court in Bedell v. Oliver H. Bair Co., Inc., 104 Pa. Superior Ct. 146, 153, that "Contracts ultra vires of the corporation making them are not merely voidable 'but wholly void and of no effect' . . ." in concluding that the original note in the Strauss case was void as an ultra vires act of the corporation just as the original note in the present case was void because prohibited by the Constitution and the statute and that, therefore, the present case cannot be distinguished from the Strauss case. It would serve no useful purpose to make an extended discussion of the much mooted question of the effect of ultra vires acts of a corporation. It is sufficient to note that in Globe Indemnity Co. v. McCullom, Receiver, 313 Pa. 135, 137 (1933), Mr. Justice Schaffer said:

"We have held to the principle that the law will not sanction the effort of a corporation to divert its capital to a different purpose from that for which it was created or to risk it in guaranteeing the obligations of another." See also Safe Deposit & Trust Company of Pittsburgh, v. Federal Street and Pleasant Valley Passenger Railway Co., 255 Pa. 497, 500 (1917).

We are familiar with the line of cases holding that where an ultra vires contract has been executed by one party the other party cannot resist performance on that ground: Roberts's Trust Estate, 316 Pa. 545, 550 (1934); Cameron v. Christy, 286 Pa. 405 (1926); but that was not the situation in the Strauss case nor is it the situation here. In the Strauss case, as here, the contract was against the public policy of the Commonwealth: See National Bank of Shamokin, to use, v. Waynesboro Knitting Co., 314 Pa. 365, 371 (1934);

Federal National Bank v. Cross Creek & Pittsburg Coal Co., 220 Pa. 39, 41 (1908). The rule stated in Pittsburg v. Goshorn, 230 Pa. 212, 227, would therefore apply to the situation in both cases:

"If then this contract offends against public policy, as it unquestionably does, the legal results which follow are far more serious than those which attach to a contract simply ultra vires."

As in the Strauss case, supra, the Savings Society upon receipt of this note cancelled the last previous instrument signed by the corporation and extended the time for payment of the debt (p. 521) : "Therefore the claim of the Trust Company [Savings Society] is founded upon a distinct and independent contract of endorsement entered into by the corporation at a time when the defense of ultra vires had been abolished by law"; and at a time when there was no statutory provision against increases of indebtedness. We cannot distinguish between the two cases, and we consider ourselves bound by the Strauss case. As in that case, the Savings Society was unable to produce the original notes.

At the conclusion of the discussion in the adjudication, the chancellor referred to an additional reason for allowing the claim. At the time the original note was given in 1923, the corporation had no creditors and only three stockholders all of whom consented to, or participated in, this transaction. At that time neither the corporation nor its stockholders would have been permitted to defend this action: Waring v. WDAS Broadcasting Station, Inc., 327 Pa. 433, 442 (1937) ; Stony Brook Lumber Co. v. Blackman et al., 286 Pa. 305. Are the present exceptants in any better position?

The J. S. Young Company became a creditor of the company in 1926, and became its principal stockholder in 1927, after which its representatives became directors of the corporation. Notwithstanding, the note of claimant was renewed regularly until January 23,

1938, or for more than 11 years. It was not until the affairs of the corporation reached their present status that any question was raised, although the note continued to carry 1,100 shares of the stock of the corporation as collateral, and the names of Haffner and Hafer continued to appear as comakers. Under these circumstances, we think that the rule stated in Stony Brook Lumber Co. v. Blackman et al., supra, that " 'Where all the stockholders consent and there are no creditors, the officers may dispose of the property of a private corporation as they see fit' . . ." applies.

We conclude that all the exceptions must be dismissed, and that the decree nisi must be entered as a final decree.

And now, February 28, 1942, it is ordered, adjudged, and decreed as follows:

1. That the exceptions of The J. S. Young Company to the findings of fact, conclusions of law, and decree nisi be dismissed.

2. That the decree nisi entered on August 22, 1941, be entered as a final decree.

3. The following claims against the trust estate are allowed as valid claims:

The J. S. Young Company..........$47,889.44

The J. S. Young Company, assigned claims ........................ 24,989.05

John D. Keith, assignee of Bell Shoe Stores, Inc., of Lynchburg, Va...... 1.84

Hanover Savings Fund Society...... 39,384.62

4. New Oxford Shoe Company is insolvent.

It is further ordered and decreed that further hearings be held at a time to be fixed for the purpose of determining whether shares of the capital stock of New Oxford Shoe Company have heretofore been issued, and are now outstanding, without full consideration for the same having been received by the corporation, and

whether assets of the corporation have heretofore been illegally or unlawfully distributed to shareholders as dividends.