Sunseri, Appellant, *v.* Sunseri et al.

2

Argued October 1, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Harvey A. Miller,* for appellant.

*Elder W. Marshall,* with him *John A. Metz, John A. Metz., Jr., Metz & Metz* and *Reed, Smith, Shaw & McClay,* for appellees.

OPINION BY MR. JUSTICE LINN, November 10, 1947:

Plaintiff appeals from the refusal to take off a nonsuit. He sued for the value of his share of a property dividend alleged to have been declared and set aside by the defendant corporation but of which delivery was refused.

We shall state the circumstances of the dividend as the jury * might have found the facts. On January 3, 1943, the defendant, Pennsylvania Macaroni Co., a Pennsylvania corporation, engaged in the grocery business, had outstanding 15,000 shares of capital stock of which the plaintiff owned 6,666. His brother, the individual defendant, had originally owned 6,666 shares but had recently told plaintiff that he had purchased their sister's holding of 1,666 shares and would now dominate the company's activity. The remaining two shares had been issued to another brother, Salvatore Sunseri, to qualify

---

* The evidence and the inferences from it must be taken in the sense most favorable to plaintiff's contention: *Kallman v. Triangle Hotel Co.,* 357 Pa. 39, 42, 52 A. 2d 900.

him as director. Salvatore, who had been president and director, died August 12, 1942, creating a vacancy in the office of president and in the directorate. The individual defendant, Agostino Sunseri, was treasurer and the plaintiff, Michelino Sunseri, was secretary; both were directors and until the vacancy resulting from Salvatore's death was filled, constituted the entire board of directors. No questions of creditors' or innocent holders' rights are involved.

The Sunseri family was conducting the business in corporate form. After the death of Salvatore, the president, "dispute, some arguments and quarrels" arose between the remaining two brothers whereupon Michelino, the plaintiff, decided to sever his connection with the corporation and to go into the same business on his own account. Having that in mind, on or about January 6, 1943, with the merchandise inventory of 151 sheets aggregating $128,169.28 before them, the plaintiff secretary, and defendant, Agostino, treasurer, went over it and withdrew from it certain sheets showing merchandise in the total amount of $15,854.57, and agreed that plaintiff should receive four-ninths and defendant five-ninths of the property inventoried on those sheets, which were then set apart from the inventory. The fraction four-ninths represented the plaintiff's proportion of the shareholding of himself and his brother, on the assumption that his brother had purchased their sister's 1,666 shares as he informed plaintiff that he had done. They did not, by marks, identify the merchandise item by item, but on February 9, 1943, on the stationery of the corporate defendant, they specified this merchandise by reference to nine floor locations, with the specified amount at each location. The total was given as $15,-851.80, and the schedule was signed by the plaintiff as secretary and by his defendant brother, as treasurer. At that time the corporation had but two officers and two directors, the plaintiff and the individual defendant.

The property dividend was set aside by all of the officers and directors who owned all of the stock except the two qualifying shares once owned by the deceased brother, assuming, as we must at this stage of the case, that the individual defendant had theretofore purchased his sister's stock as he informed plaintiff. The action was not ineffective for want of the usual more formal corporate action.

So far as the case had been developed in the court below, it appeared to be one of those cases in which the courts, having all interested parties before them, consider as identical the interests of the corporation and its shareholders, as individuals: compare *Markovitz v. Markovitz,* 336 Pa. 122, 8 A. 2d 36; *Edirose Silk Mfg. Co. v. Bank,* 338 Pa. 139, 12 A. 2d 40; *Great Oak B. & L. v. Rosenheim,* 341 Pa. 132, 19 A. 2d 95. While in some circumstances a corporation may revoke and set aside the declaration of a dividend, plaintiff's case, as presented, does not disclose any ground on which the corporation could divest its stockholder's right to the dividend. See 1 Savidge, Pennsylvania Corporations 477, section 597; *Dock v. Schlichter Jute Co.,* 167 Pa. 370, 31 A. 656; *Powers-Buchanan Co. v. Powers,* 269 Pa. 388, 390, 112 A. 541; *Young v. Bradford County Telephone Co.,* 341 Pa. 394, 399, 19 A. 2d 134; *Childs v. Adams,* 43 Pa. Superior Ct. 239, 247. This dividend reduced the inventory of $128,169 by $15,851, and the difference, $112,318, was used as the basis of the corporate income tax return on which the tax was paid. In November of 1943, after the plaintiff had made demand for his dividend, the board of directors as then constituted took formal action reciting that in the "merchandise inventoried, the sum of $15,851.80 was omitted from and not included in the said inventory" and directed that the inventory be increased by that sum. The board also directed the officers to execute an amended income tax return and to pay income tax in accord with the change.

The record shows that by agreement executed on March 24th by the plaintiff and the corporate defendant, the plaintiff sold to the corporation his 6,666 shares for $60,000, payable $5,000 in cash, $15,000 in accounts receivable and $40,000 in merchandise. This contract has been performed.

Defendants contend that the action of the two directors in declaring the property dividend on January 7, 1943, and in signing on February 9th, as secretary and treasurer, the schedule specifying the location and value of the property set aside to satisfy the dividend, was merely part of preliminary negotiation leading to the purchase by the corporation of plaintiff's shares embodied in the contract executed March 24th; that the preliminary negotiations were merged in the writing making it the only contract between the parties; that the learned trial judge, having provisionally received the evidence of the dividend, generally outlined above, ruled correctly in striking it, from the record, and entering the nonsuit. We must reject this contention; the evidence was for the jury.

Defendants suggest four reasons to support their contention. The first is that "The Parol Evidence rule prevents enforcement of the oral agreement regarding the division of the alleged $15,854.57 of merchandise." It should be apparent from our account of the trial, that the rule has no application. The suit is to recover the value of plaintiff's share of the dividend; the contract executed March 24, 1943, comes into the case collaterally; its obligations have been performed; the suit is not to enforce rights created by that contract which therefore does not prevent proof by parol evidence of the right to value of the property dividend: compare *Garrison v. Salkind*, 285 Pa. 265, and cases cited page 271, 132 A. 125. The second ground relied on is that "The Parol Agreements were a fraud on the corporation and the other shareholders and are, therefore, not enforceable." That does not appear; we must confine our

consideration to what the jury may find from the evidence. They may find that plaintiff was justified in taking his brother's word about the purchase of their sister's stock, so that all but two shares out of 15,000 were represented when, in their official capacities, the secretary and treasurer acted and evidenced their action by signing the schedule referred to above. The third reason stated is that the corporation cannot be liable "because there is no evidence of corporate action authorizing or making it a party to such agreements." After what has been said with respect to the family corporation activity and the acts of the secretary and treasurer who alone constituted the entire board of directors, this point does not merit further discussion. The fourth and last point is, "If there was a contract between Michelino and Agostino for the division of corporate assets, both of them are equally at fault for failure to perform the same and neither can hold the other liable for said default." If we understand this position it is based on a suggested finding that when plaintiff sold his shares on March 24, 1943, the parties, as the brief states, "effectively abandoned their earlier parol agreement and, in fact, the performance of that agreement became impossible." On this record that fact cannot be determined as matter of law.

Agostino's liability may depend on the doctrine of promissory estoppel. See *Antone v. New Amsterdam Casualty Co.*, 335 Pa. 134, 6 A. 2d 566, at page 140, where we said: "The doctrine of estoppel is based upon the principle that 'a person is held to a representation made or a position assumed, where otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances of the case, has in good faith relied thereon'": *Pearlman Trust*, 348 Pa. 488, 494, 35 A. 2d 418.

The order appealed from is reversed, and the record is remitted for trial.