Hook, Exrx., *v.* Hook & Ackerman, Inc., Appellant.

Argued October 2, 1953. Before STERN, C. J.,
STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-
NOLD, JJ.

*Harry Price*, with him *Charles L. Cunningham* and
*Stonecipher & Cunningham*, for appellant.

*George L. Eynon*, with him *Clarence H. Clasper* and
*Shoemaker & Eynon*, for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, No-
vember 9, 1953:

This is a suit in equity for an accounting for royal-
ties allegedly due under a license agreement covering
a patent for heater boilers.

The agreement was entered into in 1945 between
Hook and Ackerman, Inc., a Pennsylvania corporation,
and Harold S. Ackerman and plaintiff's decedent, C.
Howard Hook. The agreement declared that the indi-
viduals, Hook and Ackerman, were the owners each
of an undivided one-half part of a patent No. 2,247,796
for heater boilers, and they granted the corporation
the exclusive right and license to manufacture, use
and sell boilers covered by the patent and to license
others so to do. The corporation agreed to pay Hook
and Ackerman each a royalty of 5% of the net selling

price of the type of boilers then being manufactured by the corporation under said patent. The corporation further agreed to maintain proper books of account of all boilers manufactured and sold by it coming under the agreement and to render quarterly statements to Hook and Ackerman showing the number of boilers manufactured and sold during the previous quarter, such records of account to be available for the inspection of Hook or Ackerman or a certified public accountant designated by them. The agreement was to remain in force and effect during the life of the patent and any extensions, reissues and continuations thereof, and was to inure to the benefit of the parties, their legal representatives, successors and assigns. There were several other provisions not pertinent, however, to the present controversy.

Originally one-half of the stock of the corporation was owned by Hook and one-half by Ackerman, but at the time the license agreement was entered into Hook withdrew from the corporation and sold all his stock to another party.

Defendant corporation paid Hook the quarterly royalties due him down to October 1, 1948, but none thereafter. Plaintiff's complaint prayed for an accounting and that defendant be ordered to make its books and records available for inspection and audit and pay to plaintiff all royalties due in accordance with the agreement. Defendant filed an elaborate answer, to which plaintiff replied. Hearing was had, with the result that the chancellor, who made extensive findings of fact and conclusions of law, decreed that judgment be entered in favor of plaintiff and against defendant in the sum of $20,248.38, being $18,074.75 for royalties for the period from October 1, 1948 to September 30, 1951, plus interest in the amount of $2,173.63. The chancellor further ordered and decreed

that defendant account to plaintiff for all other royalties due under the agreement, and that all invoices, books of account and other records pertaining to the matter be opened to plaintiff for a full and complete examination. The court en banc dismissed all exceptions to the adjudication.

On defendant's present appeal it presents various contentions which were rejected by the court below. Considering them seriatim, they are as follows:

(1)  That Hook violated the terms and provisions of the license agreement by himself engaging in the business of manufacturing and selling boilers.

The answer to this contention is that there is nothing in the license agreement between the parties whereby Hook agreed not to engage in the business of manufacturing and selling boilers. Nor, as the chancellor found, was there any other agreement between the parties which so provided.

(2)  That Hook manufactured and sold boilers which infringed the patent covered by the license agreement.

The answer to this contention is that Hook, prior to the commencement of the present action, had instituted a declaratory judgment proceeding in the United States District Court for the Western District of Pennsylvania in which he sought a declaration that boilers manufactured and sold by Hook and Miller (Miller being a partner of Hook) did not infringe the patent No. 2,247,796, and the court in that action entered a judgment of non-infringement (106 Fed. Supp. 798). Defendant appealed from that judgment to the United States Court of Appeals for the Third Circuit, but the appeal was dismissed for want of timely prosecution; it has therefore been finally adjudicated that the boilers manufactured and sold by Hook and his partner do not infringe the patent covered by the li-

cense agreement. It is true that in an action instituted by defendant in the United States District Court for the Eastern District of New York against a customer of Hook and Miller a default judgment was entered decreeing that the Hook and Miller boiler infringed patent No. 2,247,796, but, as the court pointed out in the Western District of Pennsylvania case, Hook and Miller were not parties to that action nor privy thereto, and therefore were not bound by the judgment therein entered.

(3) That Hook engaged in unfair competition with the defendant corporation by selling a substantially similar boiler under a confusingly similar name, to wit, "Hook and Miller," and having the same external shape, design and appearance as defendant's boiler, with resultant confusion in the trade.

The answer to this contention is that in the declaratory judgment proceeding in the District Court for the Western District of Pennsylvania defendant filed a counterclaim, just as in the present action, seeking damages for alleged unfair competition on the part of Hook and Miller on the ground that both its own boilers and the Hook and Miller gas-fired water heaters were generally referred to in the trade simply as "Hook" boilers, and that the casings appeared closely similar in shape and size. In the adjudication of that case the court, as already stated, decreed noninfringement, but it reserved consideration of the claim of unfair competition and that issue is now pending in that court. In the present action, therefore, the chancellor refused to hear evidence in regard to such claim. It is clear that, in any event, a charge of unfair competition does not constitute a proper subject for counterclaim in the present proceeding. As far as actions of *assumpsit* are concerned, it has always been held that a claim which rests in tort can-

not be made the basis of a counterclaim: *Kelly v. Miller*, 249 Pa. 314, 318, 94 A. 1055, 1056, 1057; *Fell v. Pitts*, 263 Pa. 314, 321, 106 A. 574, 576; *O'Brien v. O'Brien*, 362 Pa. 66, 72, 73, 66 A. 2d 309, 312. Pa. R. C. P. 1031(a) provides: "The defendant may set forth in the answer under the heading 'Counterclaim' any cause of action or setoff which he has against the plaintiff at the time of filing the answer (1) which arises from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose or (2) which arises from contract or is quasi-contractual." *The same rule applies in equity.* Rule 1501 provides: "Except as otherwise provided in this chapter, the procedure in an action in equity shall be in accordance with the rules relating to the action of assumpsit." Rule 1510 provides: "A defendant [in an action in equity] may plead as a counterclaim only a cause of action, whether equitable or legal, which arises from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose . . ." It is obvious that defendant's attempted counterclaim does not arise from the same transaction from which the plaintiff's cause of action arises, since the alleged unfair competition has no connection whatever with the license agreement. Thus in *O'Brien v. O'Brien*, 362 Pa. 66, 66 A. 2d 309, which was a proceeding for an accounting, the defendants having filed a counterclaim alleging that the plaintiff was engaged in unfair competition with their business, we pointed out (p. 73, A. p. 312) that an action for unfair business competition could have been maintained even had there been no contract at all between the parties, and therefore it could not be said to have arisen, within the intendment of Pa. R. C. P. 1031(a), from the same transaction from which the plaintiff's cause of action

arose. In the present case, therefore, whatever may be the final adjudication in the federal court of defendant's claim for damages for alleged unfair competition, it is not cognizable as a counterclaim in the present proceedings, and the chancellor properly excluded it from consideration.

(4) That the defendant corporation was entitled to the patent free of royalties because the invention embodied therein was made by its employes at its direction and by the use of its time, labor and materials, and therefore, in signing the agreement as President of defendant corporation, Hook was fraudulently exacting from it the payment of the royalties and transferring its assets to himself as alleged half owner of the patent.

The answer to this contention is that, even assuming, arguendo, that the patent belonged to the defendant corporation and not to Hook and Ackerman as individuals, they, being the only two stockholders of the corporation and there being no creditors involved, were at perfect liberty to divide its assets between themselves, impose upon the corporation the payment equally to each of them of the royalties provided for in the license agreement, or make any other arrangement with the corporation in regard thereto as they both saw fit: *Young, Admr., v. Bradford County Telephone Co.*, 341 Pa. 394, 399, 400, 19 A. 2d 134, 137. Since Hook, Ackerman, and the corporation all were parties to the instrument, it is obvious that the charge of fraud as far as Hook is concerned is without any foundation whatever.

(5) That the so-called PH and MG model boilers manufactured and sold by defendant did not come within the scope of the license agreement and that royalties as to them were therefore not due to plaintiff.

The answer to this contention is that there was evidence that defendant itself had placed upon these boilers the patent number 2,247,796 and had advertised them as patented. Moreover, the chancellor found that the features of the boiler covered by the patent were the cycloidal shape of the tubes and the flanges overlapping the intermediate section, and that the tubes in the PH and MG boilers also have the cycloidal curve and the overlapping flanges, the only difference —a minor one—being that the flanges are detachable. The court was therefore justified in its conclusion that the PH and MG boilers came under the patent, and, since defendant has failed to account for the royalties due on their manufacture and sale, the court properly decreed that plaintiff was entitled, in addition to the judgment of $20,248.38 presently entered, to an accounting to determine the amount of the royalties thus due, as well as a full and complete accounting for *all* the royalties due from defendant under the terms of the license agreement. The court also properly decreed that all invoices, books of account and other records pertaining to the matter in suit be opened to plaintiff or his authorized agent for examination at defendant's place of business in Pittsburgh.

The final decree of the court below is affirmed at the cost of appellant.