## Stewart, Appellant, *v.* Parnell.

147  523
164  489

*Contract—Gambling transaction—Stocks.*

A purchase and sale of stocks, although upon speculation, is not a gambling transaction, if the stocks are delivered.

*Equity—Money lost in stock gambling.*

A court of equity will not lend its aid to a party sui juris to recover the money he has invested and lost in stock gambling: Ruchizky v. De Haven, 97 Pa. 202, distinguished.

*Principal and agent—Estoppel—Stock speculation.*

On a bill in equity for an account, it appeared that the plaintiff's intestate deposited a sum of money with the defendant, her agent, to be devoted at the agent's discretion to speculation in stocks for the benefit and at the risk of the owner. The agent applied the money in the way intended, in the utmost good faith, but the speculations were unsuccessful and the money was lost. The agent did not communicate to her principal the facts of the loss, but sought to retrieve it by using her own money in other speculations for that purpose. Remittances to a large amount were sent to the principal, who was allowed to regard them as proceeds of investments of the agent with the money intrusted to her. *Held*, that the conduct of the agent did not estop her from showing the truth as to the condition of her account with the principal. The position of the principal was in no ways prejudiced by the agent's conduct.

Argued April 1, 1891. Appeal, No. 143, Jan. T., 1891, by plaintiff, Edward L. Stewart, administrator of Charlotte Smith, deceased, from decree of C. P. No. 3, Phila. Co., March T., 1888, No. 717, in favor of Delia T. S. Parnell, dismissing exceptions to a master's report. Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Bill in equity for an account.

The facts appear by the opinion of the Supreme Court. The case was referred to Thomas J. Worrell, Esq., as master, who recommended that the bill should be dismissed. Exceptions to the master's report were overruled, and a decree entered dismissing the bill.

*Errors assigned* were the decree of the court and the dismissal of exceptions.

*Joseph Hopkinson, Preston K. Erdman* and *Richard C. Dale* with him, for appellant.—The defendant's conduct estopped her from setting up the defence presented before the master: Bigelow on Estoppel, p. 639; Knights v. Wiffen, L. R. 5 Q. B. 660; Leather Manufacturers' Bank v. Morgan, 117 U. S. 96; Broom's Legal Maxims, 169; Cave v. Mills, 7 H. & N. 913; Bassett v. Holbrook, 24 Conn. 453; Cocks v. Masterman, 9 Barn. & Cress. 902; Ins. Co. v. Ins. Co., 97 Pa. 1; Harris v. Truman, L. J. 51 Q. B. 338.

The transaction contemplated by the parties was stock gambling: Dickson v. Thomas, 97 Pa. 278; North v. Phillips, 89 Pa. 250; Gheen v. Johnson, 90 Pa. 44; Ruchizky v. De Haven, 97 Pa. 202.

*Charles Chauncey, I. Tyson Morris,* and *Geo. Tucker Bispham* with him, for appellee.—Mrs. Parnell is not estopped from showing the loss of the money, because nothing she said or did injured Miss Smith, or induced any change in her position, or led her to refrain from any action: Commonwealth v. Moltz, 10 Pa. 527; Patterson v. Lytle, 11 Pa. 53; Gould v. Ins. Co., 134 Pa. 570; Weaver v. Lynch, 25 Pa. 449.

The transactions in which the money was lost were bona fide sales and purchases and not gambling: Smith v. Bouvier, 70 Pa. 325; Maxton v. Gheen, 75 Pa. 166; Esser v. Linderman, 71 Pa. 76.

Even if these transactions had been gambling ones, the contract being executed and the parties sui juris, this court would not interfere: Speise v. McCoy, 6 W. & S. 485; Frick v. Hammond, 2 Clark (Pa.) 156.

OPINION BY MR. JUSTICE McCOLLUM, March 21, 1892.

It is conceded that the answer is responsive and must be accepted as verity unless it is successfully controverted by the evidence. The learned master has found, with the approval of the court below, that the proofs are in harmony with and corroborative of the answer, and we are not convinced that this finding is unwarranted. The facts so ascertained are that in July, 1876, Charlotte Smith, the decedent, deposited with Delia T. S. Parnell, the appellee, $4,538, to be devoted in her discre-

tion to speculations in stocks, and other securities for the benefit and at the risk of the owner. The money so intrusted to the appellee was applied by her in conformity with the understanding between the parties, and in the utmost good faith, but the speculations were unsuccessful and the money was lost in them. The appellee did not communicate to Miss Smith the fact of this loss, but sought to retrieve it by using her own money in other speculations for that purpose. After the loss, remittances aggregating over $3,000 were made by her to Miss Smith, who was allowed to regard them as proceeds of investments made by Mrs. Parnell with the money intrusted to her. The purpose in withholding from Miss Smith the knowledge of her loss was twofold, and is fully disclosed in the answer. It appears that she was in delicate health, and consequently unfitted to receive such information, and that Mrs. Parnell entertained the hope of repairing the loss by using her own money as above stated. It may be doubted whether her action in the premises was judicious, but it is clear that the motives which prompted it were generous and honorable. It is obvious that it is necessary to a just comprehension of the transaction under investigation that it should be viewed in the light of the correspondence between the parties to it and of their intimate and friendly relations. That Miss Smith had entire confidence in the appellee, and that it was justified by her fidelity to the interests committed to her care, cannot be doubted. While her efforts in the stock market were not rewarded by the success which was anticipated, there was no taint of selfishness or bad faith in them. The most that can be said of the losses which followed them is that they were the result of erroneous judgment, and included her own money with that which was intrusted to her. For a loss thus occasioned she was neither legally nor morally bound to compensate Miss Smith, or her estate, because she used the money under the instructions with which she received it, and in the honest exercise of the discretion allowed her by the agreement of the parties. It is not seriously contended that there was any violation of instructions or abuse of discretion by the appellee in the use of the money intrusted to her, or that she is liable by reason of its loss, but it is insisted that her silence respecting it, and her remittances, together with the representations which accompanied them,

estop her from showing the loss in answer to the appellant's demand. In other words, the strength of his claim lies in the suppression of the truth concerning the transaction on which it is founded. It is of the essence of an estoppel in pais that the party alleging it "must have been induced to act upon the representation or concealment," and "his action must have been of a character to result in substantial prejudice were he not permitted to rely on the estoppel:" Am. and Eng. Ency. of Law, vol. 7, page 18, and cases cited. And this action must be affirmatively shown: Commonwealth v. Moltz, 10 Pa. 527; Wright's Ap., 99 Pa. 425.

An essential ingredient of an estoppel is wholly wanting in the present case. There is not even a scintilla of evidence that Miss Smith's condition was injuriously affected in the slightest degree by the matters claimed as the basis of an estoppel. Certainly she was not prejudiced by the remittances, and the knowledge that her money was lost would not have enabled her to recover it. As was said by Chief Justice MERCUR, in Zell's Ap., 103 Pa. 346: "Prompt disclosure would not have availed her. She could not have acquired anything thereafter, and she released nothing." There is no substantial merit in the suggestion that the transfer of the Smith account with Emmet, Couillard & Co., to the account of Fanny Parnell, was a technical departure from instructions, because it was accompanied by a like transfer of the appellee's account with the same firm for more than double the amount, and she was expressly authorized to do with the Smith money as with her own. But we need not consider this subject further, as it is conclusively shown by the learned master that payments were made by the appellee, after the money intrusted to her was lost, in excess of the amount so transferred, with interest thereon. In answer to the claim that the transactions were of a gambling nature, we have the finding of the master, and the admission of the counsel for the appellant, in their printed argument, that the stocks and securities, which were the subject of the speculations, were actually delivered. The master says: "The transactions were real, and not fictitious," and his finding in this respect is as conclusive as the verdict of the jury on a like point in Smith v. Bouvier, 70 Pa. 325, in which it was decided that a purchase and sale of stocks, although upon

speculation, is not a gambling transaction, if the stocks are delivered. If it be assumed that the appellant's contention as to the nature of the speculations is correct, we do not see what he is to gain by it, in view of the fact that Miss Smith authorized them. We agree with the learned master, that a court of equity will not lend its aid to a party sui juris to recover the money he has invested and lost in stock gambling. It is true, that in Ruchizky v. De Haven, 97 Pa. 202, an action for the recovery of money so lost was sustained, but distinctly on the ground that the plaintiff was a minor, this court, in an opinion delivered by Chief Justice Gordon, saying: "If the parties had been sui juris, the contract having been fully executed, we would not interfere to help either party. But such is not the case; for, as we have said, Ruchizky was a minor, and hence was entitled to legal protection and guardianship."

Decree affirmed, and appeal dismissed at the costs of the appellant.