984

## REED v. HARDT et al.
### No. 1564.

District Court, E. D. Pennsylvania.
Sept. 28, 1942.

Thomas J. Minnick, Jr., of Philadelphia, Pa., for plaintiff.

Ernest R. von Starck and Arthur Littleton, of Morgan, Lewis & Bockius, all of Philadelphia, Pa., for Hardt, trustee for creditors of Pearlman, et al.

Frederick A. VanDenbergh, Jr., and Allen S. Olmsted, 2nd, both of Philadelphia, Pa., for Federal Deposit Ins. Corporation, additional defendant.

BARD, District Judge.

This action was brought by plaintiff against J. William Hardt, Trustee, for Creditors of Martin M. Pearlman, under a trust agreement dated October 1, 1930, to enjoin the defendant from distributing any part of the proceeds of an insurance policy on the life of Pearlman and to compel the defendant to account for and to pay to plaintiff the distributive share of such proceeds to which he claims he is entitled under the trust agreement. The defendant interpleaded the other creditors who were beneficiaries of the trust agreement and all the defendants filed answers to the complaint. A preliminary injunction was granted restraining the trustee from distributing any of the proceeds of the policy, but this was later modified so as to permit

him to distribute all such proceeds in excess of $5,000.

There is no dispute as to the facts in the case and they have been set forth in a stipulation entered into by all parties in interest. From this stipulation I make the following special

## Findings of Fact:

1. On or about October 1, 1930, Martin M. Pearlman and his wife entered into a trust agreement with J. William Hardt and certain other creditors of Pearlman whereby the Pearlmans transferred and assigned to Hardt, as trustee for the creditors, certain assets to administer in accordance with the terms of the trust agreement, and to distribute among the creditors in the ratio each of their claims bore to the total claims.

2. One of the creditor parties to the agreement was the Southwark National Bank, which was succeeded by the Commercial National Bank of Philadelphia.

3. On June 22, 1934, a receiver was appointed for the Commercial National Bank of Philadelphia, and the present plaintiff is currently the duly appointed receiver of that institution.

4. One of the assets transferred to Hardt as trustee under the agreement of trust was an insurance policy on the life of Pearlman for the sum of $100,000.

5. Subsequent to the assignment and transfer Pearlman ceased to pay the premiums on this policy and in order to reinstate it without a medical examination of the insured, it was necessary that a premium of $7,555.20 should be paid thereon prior to February 4, 1934.

6. Section XII of the trust agreement provided that if Pearlman failed to pay the premium on any of the policies of life insurance transferred to him by the trust estate, the trustee should have the right "to expose the Trust Estate or such part thereof as then remains undistributed, at public or private sale * * * and Trustee shall have the right representing such of Creditors as wish to join therein, to purchase the same or any part thereof * * *."

7. All the creditor parties to the trust agreement agreed that this premium should be paid by the trustee from funds to be contributed by each of them in the proportion that each of their claims bore to the total of all claims.

8. The then receiver of the Commercial National Bank of Philadelphia contributed his proportionate share of that premium amounting to $564.58, and all of the other creditor parties likewise contributed their shares in accordance with their agreement.

9. In order to reinstate the policy once more without a further physical examination of the insured, it became necessary to pay a premium of $9,799.19 on or before May 4, 1936.

10. In April of 1936 the trustee notified all the creditor parties of a meeting to consider what steps might be taken to meet this payment. Pursuant to this notice, a meeting was held on April 14, 1936, but this was not attended by the then receiver of the Commercial National Bank of Philadelphia or his representative.

11. At this meeting the creditors present agreed that the amount of the premium should be raised by contributions from each of the creditor parties in the proportion each of their claims bore to the total of all claims, and it was further agreed that if one of the creditor parties should not contribute its proportionate part of the premium, the other parties would pay the share of the defaulting party and thereafter the defaulting party's share would consist only of its proportionate share of the then cash surrender value of the policy and that this amount would not be paid to the defaulting party until the death of the insured.

12. On April 16, 1936, the trustee notified the receiver of the Commercial National Bank of Philadelphia of the action taken at the meeting and asked to be advised whether the receiver would contribute its proportionate share of the premium.

13. On May 4, 1936, the defendant-trustee paid the said premium of $9,799.19, which was contributed to by all the creditor parties with the exception of the plaintiff.

14. Thereafter the then receiver of the Commercial National Bank of Philadelphia notified the trustee that he had been instructed by the office of the Comptroller of the Currency to refuse to pay any portion of the premium, whereupon the trustee informed him that the interest of the Commercial National Bank of Philadelphia in the policy would thereafter be limited to its pro rata share in the cash surrender value of the premium prior to the payment of

the premium of May 4, 1936. This share amounted to $519.44.

15. If the premium due May 4, 1936, had not been paid in cash, as was done, the following steps might have been taken in regard to the policy:

(a) The premium arrears, amounting to $8,791.19, could have been paid off by means of a loan on the policy, and the policy placed under extended term insurance in the amount of $91,377., which term would have expired September 4, 1939.

(b) The premium arrears amounting to $8,791.19, could have been paid off by means of a loan on the policy, and the policy thereafter would have had a paid-up life non-participating value of $10,714. free of indebtedness.

(c) The premium arrears and quarterly premium due May 4, 1936, totaling $9,799.-19, could have been paid by means of a loan on the policy, and thereafter further premiums could have been borrowed in full on the policy until November 4, 1938, at which time the loan value of the policy would have been $6 less than the premium then due. It would have thereafter been necessary to pay all subsequent premiums in cash in full.

16. Subsequent premiums on the policy were paid by loans made upon the security of the policy.

17. On July 21, 1938, the Receiver of the Commercial National Bank of Philadelphia wrote a letter to the trustee offering to sell to him or to any of the other parties to the trust agreement "our interest represented by our share of the cash surrender value, in the amount of $579.25 on the Sun Life Insurance Company policies on the life of Mr. Martin M. Pearlman".

18. Neither the trustee nor any of the creditor parties accepted the offer of the sale made by the receiver of the Commercial National Bank of Philadelphia.

19. Martin M. Pearlman died on March 11, 1941, and on May 14, 1941, the insurance company paid to the defendant the sum of $75,830.18 in settlement of the claim under the policy, which sum represented the principal amount of the policy less the total of the loans thereon.

#### Discussion.

The dispute in this matter is whether the plaintiff is entitled to receive the pro rata share of the proceeds of the insurance policy on the life of Pearlman which his claim against Pearlman bore to the total claims of the creditors for whom the assignment in trust was made, or merely his pro rata share of the cash surrender value of the policy as of May 4, 1936. By the terms of the agreement each creditor is entitled to share in the distribution of any of the trust assets in the ratio of the amount of his claim to the total claims. Unless, therefore, plaintiff has forfeited or waived his rights under the trust agreement, he is entitled to his pro rata share of the proceeds of the policy in question.

The principal contention of the defendants is that the agreement of all the creditors to advance the arrearage in the premium due February 4, 1934, to reinstate the policy, and the payment of their contributions in accordance with this agreement, constituted a sale of this asset under paragraph XII of the trust agreement. This paragraph authorizes the trustee, under certain conditions, to expose the trust estate or undistributed assets therein to public or private sale, and further authorizes him to purchase the same as representative of such of the creditors as wish to join for that purpose. The defendants' argument is that the effect of this transaction in 1934 was that Hardt, as representative of all the creditors (since all the creditors joined in the 1934 arrangement), purchased this asset from the trust estate and thereafter it was no longer subject to the terms of the trust agreement, but was a chose in action jointly owned by the same creditors in what might be termed a joint venture.

This contention cannot be sustained. There is nothing whatsoever in the facts which would support the conclusion that there was a sale of this policy by the trust estate. The transaction was a simple one. The trust estate owned an asset the value of which might be greatly enhanced if cash expenditures were made which were necessary to prevent its liquidation at the then cash surrender value. All those who were beneficially interested in the trust estate thereupon agreed to, and did, advance their pro rata share of these necessary expenditures. There was no intention to remove or withdraw this asset from the trust estate. On the contrary, the intention of the parties seems clearly to have been merely to maintain this policy as a trust asset and not to liquidate it at that time.

The policy was therefore still an asset of the trust in April of 1936, when the creditors of Pearlman were faced with the problem of paying the premiums accruing in May of that year and keeping the policy alive or of accepting its then cash surrender value. All the creditors except the plaintiff met and agreed to contribute their proportionate share of the accruing premium, as well as the proportionate share of any creditor who refused to contribute. They further agreed among themselves that any non-contributing creditor would be barred from participating in the proceeds of the policy except to the extent of his prorata share of the then cash surrender value of the policy, to be paid to such creditor upon the death of the insured.

■ This agreement, to which plaintiff was not a party, could in no way affect his rights in the trust estate. The extent of his interest in the assets of that estate was fixed by the trust agreement and could not be altered by the other creditors without his consent. The other creditors had no duty to pay the premiums and to keep the policy alive, but the fact that it was necessary for them to pay plaintiff's share of the premium as well as their own, in order to protect their own interests, gives them no right to alter the terms of the trust with respect to the extent of plaintiff's participation in its assets. They are, of course, entitled to be reimbursed for the sums advanced by them to pay plaintiff's proportion of the premiums, with interest thereon, but they may not by their own arrangement deprive him of his rights under the trust agreement.

■ The further fact that in July of 1938 plaintiff "recognized" the validity of the arrangement limiting his participation in the proceeds of the policy by offering for sale his share of the "cash surrender value" in the amount of its value at the time of the arrangement in 1936, likewise does not defeat plaintiff's rights under the trust agreement. Even if plaintiff mistakingly believed that the other creditors could validly deprive him of his rights under that agreement, this offer to sell at that price was certainly not tantamount to a consent by him to the arrangement which they had made. Moreover, the offer of the receiver to sell his share is equally consistent with an attempt on his part to liquidate his interest in the policy at the price set by the creditors rather than to gamble on whether the other creditors would maintain the policy in effect until the death of the insured.

■ The authorities relied upon by the defendants that a member of a joint venture may not in equity be permitted to share profits thereof if he fails to contribute his proportionate share of the expenses are not in point. In those cases the plaintiff defaulted in advancing the share of the expenses which he had agreed to advance. In the case at bar plaintiff did not agree in the trust agreement to advance anything and accordingly his rights thereunder cannot be defeated by his failure to enter into a new undertaking which the other parties thereto decided upon in order to enhance their joint interest.

I make the following

### Conclusions of Law:

1. The execution of the arrangement among the creditors who are parties to the trust agreement to pay their proportionate shares of the funds necessary to pay the premium on the policy on the life of Pearlman which became due on February 4, 1934, did not constitute a sale of that policy by the trust estate.

2. Plaintiff never agreed or consented to the arrangement by the other creditors made in April of 1936 to advance additional sums for the payment of the then current premium on the policy on the life of Pearlman and to limit the interest of any creditor who failed to make his contribution to his proportionate share of the then cash surrender value of the policy.

3. Plaintiff is entitled to a decree in the amount of that proportion of the proceeds of the policy which his claim bore to the total of the claims of all the creditors under the trust agreement less the amount of premiums advanced by the other creditors on his behalf, with interest thereon. A computation may be submitted by counsel.