## Pearlman Trust.

Argued November 26, 1943. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*Morris Wolf*, of *Wolf, Block, Schorr & Solis-Cohen*, for appellant.

*W. Heyward Myers, Jr.*, with him *John N. Schaeffer, Jr., Arthur Littleton, Morgan, Lewis & Bockius, Allen S. Olmstead, 2nd, J. Hibbs Buckman, Thomas J. Minnick, Jr., Gilbert J. Kraus, R. K. Denworth* and *Philip H. Strubing*, for appellees.

490

OPINION BY MR. JUSTICE LINN, January 14, 1944:

This appeal by the liquidator of a building association is from a decree entered at the audit of a trustee's account and involves a dispute between claimants for the proceeds of life insurance. The learned court held that the liquidator of the building association had abandoned his interest in the policies and was therefore not entitled to participate in the fund before the court. He has appealed.

October 1, 1930, Martin M. Pearlman and his wife transferred certain assets to J. William Hardt, trustee "for the actual and ratable benefit of" certain creditors. The William B. Hackenburg Building & Loan Association, a creditor, became a party to the trust agreement. Among the trust assets were policies of insurance issued by the Equitable Life Assurance Society on Pearlman's life. Pearlman defaulted in the payment of the insurance premiums, thus threatening the value of the interests of all the creditors in the security.

The building association went into liquidation under the direction of the Department of Banking and in November, 1937, Albert H. Lieberman was appointed liquidator. In 1940 he was unable to pay the association's proportion (8.88792%) of the premiums payable to keep the security in force. On April 18, 1940, he wrote to the trustee, in part as follows: "We note that our participation would mean a contribution from us of about $600, but the association is not in a position to incur the outlay, and we must therefore regretfully request you to omit us from the contribution list permanently, although we should be glad to be kept in touch with the situation from time to time as we still retain our interest in the $100,000 policy of the Sun Life Assurance Company of Canada, as well as in the assets other than life insurance, covered by the trust agreement of October 1, 1930.

"We took no part in paying the premium due February 5, 1940, on Policy #3628124 of the Equitable Life

Assurance Society of the United States, and as that policy at that time had no cash surrender value and the same is true now of the other three Equitable policies from which we are withdrawing, we specifically waive any possible participation, after the respective premium dates mentioned, in any distribution under any of the policies of the Equitable Life Assurance Society of the United States on the life of Martin M. Pearlman referred to in this letter."

Thereafter, the other creditors contributed the premiums. Pearlman died March 11, 1941, whereupon the trustee received the insurance with which he charged himself in the account.

The argument on behalf of the appellant liquidator, variously stated in the brief, comes to this: although unable to contribute to the premium fund and although he abandoned his interest in the trust property, he is nevertheless entitled to share in the proceeds on the theory that he had no power to abandon.

The general rule is ". . . that the trustee must exercise common prudence, common skill and common caution in the performance of his duties, or, shortly stated, due care in the circumstances:" *Casani's Estate,* 342 Pa. 468, 470, 21 A.2d 59, 60. Accordingly, it is held that a fiduciary, acting with reasonable prudence, may abandon assets: *Provident L. & T. Co. v. Fidelity, etc., Co.,* 203 Pa. 82, 88 et seq., 52 A. 34 (in which an assignee for creditors abandoned an insurance policy); *Reynolds v. Cridge,* 131 Pa. 189, 18 A. 1010 (in which an executor abandoned an interest in a bond) and cases cited in those opinions; compare *Hartje's Estate,* 320 Pa. 76, 81, 181 A. 497; *Coates's Estate,* 273 Pa. 201, 116 A. 821. Restatement, Trusts, section 192; Scott, Trusts, (1936) section 192.

The plan of liquidation adopted by the association November 3, 1937, at a meeting in which Mr. Lieberman was elected liquidating trustee, authorized him, inter

alia, "C. To sell, rent, lease, exchange, transfer, release or abandon any assets of the association, including any real estate, mortgage, leasehold, note receivable, or any other asset, at such price, for such consideration, and under such circumstances as may seem advisable in the opinion of the liquidating trustee."

In the notice dated October 13, 1937, calling for the November meeting, the officers advised the stockholders that: "The liquidation has now been so far completed by the Directors that only two assets remain outstanding, and these are contingent in nature. As a result of this liquidation there has now been made possible an additional dividend of 3%, a check for which is enclosed herewith.

"The two contingent assets* still remaining are a possible interest in insurance policies on the life of one of our borrowers which are paid up to 1940 and 1941, and a claim against another borrower which has a possible equity in it, depending upon his survival of his mother. As you can see, neither one of these has any present recovery value."

In these circumstances the liquidator concluded to abandon the association's interest in the policies; they had no "present recovery value"; he had nothing with which to pay premiums during such period as Pearlman might live, and nothing on which he could borrow money to use for that purpose. The association's last assets, except about $100, had been distributed as ". . . an additional dividend of 3%" in November, 1937. He may also have concluded that in any view it was undesirable to keep open the liquidation of the association during Pearlman's life expectancy. The association had authorized him to "abandon any assets" in ". . . such circum-

---

* One of the two assets so referred to was the interest in the Pearlman trust, and the other was an interest in a bond conditioned on the survivorship of another.

stances as may seem advisable in the opinion of the liquidating trustee." In deciding that he must abandon, he did nothing improper in advising the trustee that he "waived" participation in the policies which then had no cash surrender value. As he had no funds he could not be surcharged by shareholders or creditors of the association: *Hobday v. Peters,* 28 Beav. 603, 54 Eng. Rep. 498, 2 Scott, Trusts (1939) sec. 177, p. 938. His use of the word "waive" in his letter is not important; the important element in the transaction is the fact that he gave notice that he relinquished his interest in an asset which he could not carry. At the trial he appeared as a witness but said nothing to suggest that he did not know what he was doing when he wrote the letter or that he made any mistake. The word "abandon" has many meanings, the context and circumstances determining which is intended. If a fiduciary abandons an interest in personal property, he relinquishes it with the intention of terminating his interest in it and without intending to vest ownership in another. (See Abandonment, 1 C. J. S. p. 4 et seq.) Abandonment is therefore inconsistent with sale or gift which involve intention to transfer title to the buyer or the donee. We of course agree with appellant's argument that the liquidator could not make a gift of assets; he merely withdrew from a relationship he could no longer support.

The learned judge who tried the case was entirely right in concluding that "the liquidating trustee decided that he would not contribute the pro rata share required of the Building Association, thereupon he abandoned the policies to the remaining creditors. . . ."

It is suggested in appellant's argument that Lieberman was not obligated by the trust agreement to make any contribution to support the security. It is true that the agreement contained no express provision requiring it, but the relations of all the parties as well as the audit of the account are controlled by equitable principles.

The trustee had power to sell the security or any part of it and thus foreclose the right of any noncontributing member. He was authorized to buy the security sold in such circumstances and to hold it for the benefit of the contributing members. When, therefore, he was advised by the liquidator of the abandonment of the association's interest in the security, he was not required to subject the trust to the unnecessary expense of foreclosing the association's right to participate; he could rely on the liquidator's election to abandon because the association expressly authorized abandonment. It would be inequitable in such circumstances to sustain the liquidator's claim now to share in the proceeds because it is now impossible to restore the parties to the positions occupied by them in 1940 when the liquidator announced his election: cf. *Appeal of Yeager & Grim,* 100 Pa. 88, 91: *Appeals of Fidelity Ins. Co. & Lennig,* 106 Pa. 144.

The elements of equitable estoppel are present (*Fried v. Fisher,* 328 Pa. 497, 502, 196 A. 39; see also *Com. v. Moltz,* 10 Pa. 527, particularly pages 530 et seq.; *Antone v. N. Amsterdam Cas. Co.,* 335 Pa. 134, 140, 6 A.2d 566; *Stewart v. Parnell,* 147 Pa. 523, 525, 23 A. 838) and exclude the appellant.

In view of what has been said we need not refer to the differences in fact and controlling principles between this case and *Reed, Receiver, v. Hardt, Trustee,* 137 Fed. 2d 705 (C. C. A. 3d, 1943).

The decree is affirmed; each party to pay its own costs.

DISSENTING OPINION BY MR. JUSTICE HORACE STERN:

I dissent in this case from what I deem to be an erroneous decision.

There are, in my opinion, three fundamental principles which govern the situation here presented. The first

is that, in the absence of some contractual obligation, a cestui que trust does not forfeit his interest in the trust res by failing to loan money to the trustee, even though the purpose of the loan be to preserve the trust property and even though others of the cestuis que trustent may choose to make such a loan. The second is that, while a fiduciary has the power to abandon any part of the trust property provided in so doing he exercises reasonable prudence, he cannot, under any circumstances, make a *donation* of such property. The third is that, when one deals with a person whom he knows to be a fiduciary, he is bound to know the limitations of the fiduciary's power and therefore cannot invoke against him or the cestui que trust the doctrine of estoppel.

Let us consider the application of these principles to the present case.

1. In order to keep the policies of insurance alive it was necessary for the trustee (Pearlman having defaulted) to pay the premiums. The creditors had evidently realized that there might be such a default (it is referred to in Article XI (b) of the trust agreement), and, doubtless with this and similar contingencies in mind, gave the trustee the power "to borrow money as Trustee . . . for any purpose connected with the management of the trust which he may deem proper". The trustee could have exercised this power by borrowing the money needed to pay the premiums either from a bank or from any individual or individuals who might have been willing to lend it to him, the loan thus contracted becoming a debt of the trust estate payable, with interest, before any distribution in liquidation to the creditors. But, in the absence of any agreement to that effect, there was no *obligation* on the part of the William B. Hackenburg Building and Loan Association or of any of the other creditors to make such a loan; if some of them chose to make it they were acting, in so doing, in a capacity wholly distinct from their position as bene-

ficiaries of the trust estate. Any creditors joining in such a loan obtained the same rights thereby—no more and no less—as a *bank* would have obtained if *it* had loaned the money, and certainly *it* would not have gained, nor the creditors have lost, any property rights in the trust res by virtue thereof. It seems too clear, therefore, for extended discussion that because some of the creditors were either more able or—perhaps with a greater interest at stake—more eager than others to make a loan to the trustee, the non-lending creditors did not forfeit thereby any of their vested property rights in the trust res; the only consequence was that the lenders became entitled to repayment, with interest, of the money loaned by them before distribution of the net proceeds of the trust res among the beneficiaries of the trust. The cases cited in the majority opinion, *Appeal of Yeager & Grim*, 100 Pa. 88, and *Appeals of Fidelity Insurance Trust and Safe Deposit Co. & Lennig*, 106 Pa. 144, were simply cases where several persons agreed upon a joint purchase but one of them reneged and did not put up his share of the purchase money; naturally the defaulting party, having failed to meet his obligation, never acquired any interest in the property. There is not the slightest analogy between those cases and the present one.

The Commercial National Bank, which was a creditor of Pearlman and a beneficiary under the same trust instrument as the Building and Loan Association, also failed on one occasion to join with other creditors in a loan to the trustee designed to pay the insurance premiums. It was thereupon contended by the trustee, just as here, that the Bank had forfeited its right to participate in the proceeds of the policies. The District Court of the United States for this district held to the contrary (*Reed v. Hardt*, 46 F. Supp. 984), and refused to penalize the Bank as a cestui que trust merely because it had not joined in the loan. This decision was unani-

mously affirmed by the Circuit Court of Appeals: *Reed v. Hardt*, 137 F. 2d. 705.

2. This brings me to the next question here involved: What effect did Lieberman's letter to Hardt of April 18, 1940, "waiving" the right to participate in any distribution under the policies, have upon the rights of the Building and Loan Association in the trust res? In other words, did Lieberman have the power, as liquidating trustee of the Association, to make such a waiver, or declare such an abandonment, of the Association's property?

In considering this question two facts must carefully be borne in mind. The first is that these insurance policies were of great potential value. In the letter from the officers to the stockholders of the Association of October 13, 1937, referred to in the majority opinion, it was pointed out that the Association's interest in the policies was a contingent asset, although, Pearlman still being alive, of no *present* recovery value. The letter further stated that there were no other assets remaining in the Association except this and a certain other claim, but that the State Department of Banking insisted that a liquidating trustee be elected and that the Association be placed in formal liquidation "to await the outcome of these two contingent rights". *Thus Lieberman's appointment as liquidating trustee was for the very purpose, indeed the sole purpose, of looking after the rights of the Association with regard to its interest in these policies and the other contingent claim referred to.* That that interest was a valuable one, even though at the time contingent, is shown by the fact that at Pearlman's death in 1941 there was realized on the policies over $265,000., of which the Association's share was in excess of $15,000.

The second and controlling fact is that Lieberman, like Hardt, was himself a fiduciary, and, as such, limited in his powers. The real owner of the interest of the

Building and Loan Association in the policies was, not Lieberman, but the stockholders of the Association of which Lieberman was merely the liquidating Trustee. What right, then, did Lieberman have to surrender the Association's rights in the policies? That a fiduciary may abandon trust property is, of course, beyond question, the only requirement being that in so doing he exercise "reasonable prudence" (Restatement, Trusts, §192), and indeed Lieberman was expressly given that right in the plan of dissolution adopted by the stockholders of the Association on November 3, 1937. But it is just as elementary that a fiduciary cannot *give away* any of the trust property (65 C. J. 702, §568). What, then, is the difference between a *permissible abandonment* and a *non-permissible donation?* Simply that an abandonment by a fiduciary is permitted *when, and only when, there are relative advantages and disadvantages which present themselves to him and call for judgment on his part as to whether the trust will be better off if he retains the property or surrenders it.* The cases cited in the majority opinion exemplify this principle. Thus in *Provident Life and Trust Co. v. Fidelity Insurance, Trust & Safe Deposit Company,* 203 Pa. 82, 52 A. 34, an assignee for creditors held an insurance policy which he could preserve as an asset only if he kept paying the premiums thereon out of the trust funds; his judgment was that the assigned estate would lose in the end by keeping up the policy, and the court held that he was justified in abandoning what "was manifestly a *burdensome asset*". In *Reynolds v. Cridge,* 131 Pa. 189, 18 A. 1010, an executor was held to have acted properly in abandoning a bond belonging to the estate because it was pledged and could be preserved only by payments made by the estate, the court saying (p. 194, A. p. 1011) : "That an executor may abandon property pledged, or subject to assessment, if there is no value over the debt or the assessment to be preserved for the estate, was

ruled by Chief Justice SHAW in *Ripley v. Sampson,* 10 Pick. 373". In *Hartje's Estate,* 320 Pa. 76, 181 A. 497, and in *Coates's Estate,* 273 Pa. 201, 116 A. 821, a fiduciary was excused from proceeding against one who was indebted to the estate because, in the one case, the fiduciary, in the exercise of his judgment, reasonably believed by so doing he might destroy the debtor's ability to make further payments, and, in the other, the claim was apparently uncollectible and the costs of suit would therefore have been wasted. Thus it will be noted that in all these cases, as in every other that I have been able to find, the fiduciary was confronted with the alternative either of expending trust funds that in the end might prove to have been more than the asset which they were intended to preserve was worth, or of abandoning the trust asset altogether as the lesser of two evils. Only in such cases, if the trustee, in the exercise of his honest judgment as to which is the better course to pursue, decides to abandon the trust asset, is he acting within his legitimate powers as a fiduciary.

The situation in which Lieberman, as liquidating trustee, purported to waive the interest of the Building and Loan Association in the policies held in the Pearlman trust was entirely different from those in which, as thus stated, a fiduciary has the right to abandon trust property. Lieberman was not faced with the necessity of choosing between alternatives, or of adopting the lesser of prospective evils. He was not called upon to weigh relative advantages or disadvantages to the Association in the retention or the abandonment of a property asset of the Association. The Association was not under an obligation to do anything. It did not have to pay out any of its funds to keep the policies in the Pearlman trust alive. It was not required, either by any contract or by law, to loan money to Hardt for that purpose. It could have refrained from taking any action whatever without thereby forfeiting its interest in the policies.

If Hardt borrowed money to pay the insurance premiums, whether from a bank or from some of the Pearlman creditors or from any other persons, the Association would still have been entitled to participate in the distribution of the trust assets after Hardt had repaid the loan, just as it was held by the United States Circuit Court of Appeals that the Commercial National Bank was so entitled. Therefore, in voluntarily "waiving" the Association's interest in the policies, Lieberman, as liquidating trustee, was simply *giving away* property belonging to his cestuis que trustent (the stockholders of the Association), and without any necessity for so doing. By it he lost all of its value for those for whom he was acting as fiduciary, whereas by not surrendering the Association's property he could not have lost anything for them nor subjected them to any possible expenditure or disadvantage; the worst that could happen would have been that, if Hardt were unsuccessful in borrowing money to pay the premiums, the Association, like all the other creditors, would have realized nothing from the policies, but if he should succeed (as he did) in borrowing the money elsewhere, the Association would have obtained its share of this ultimately valuable asset. It may be argued that to allow the other creditors, or some of them, to advance the money to Hardt while Lieberman, as liquidating trustee, did not contribute, and nevertheless permit the Association to retain its rights in the trust property, would be to give support to an unsportsmanlike proposition. But a fiduciary must protect the rights of those for whom he is trustee; he is not to show sportsmanship by making a donation of the property of his beneficiaries. In short, while Lieberman undoubtedly had the right, as stated in the majority opinion, properly to abandon assets of the Association, it is clear that he had no power, either by law or under the plan of dissolution adopted by the Association, to *give away* its property *without any possible advantage accruing to it thereby.*

3. We come, finally, to a consideration of the assertion in the majority opinion that "the elements of equitable estoppel are present and exclude the appellant." This statement overlooks the fundamental principle that if one deals with a person known to him to be a fiduciary he is bound to know, and to have corresponding regard to, the limitations of his power. In none of the cases cited in the majority opinion—*Fried v. Fisher,* 328 Pa. 497, 196 A. 39; *Commonwealth v. Moltz,* 10 Pa. 527; *Antone v. New Amsterdam Casualty Co.,* 335 Pa. 134, 6 A. 2d 566; *Stewart v. Parnell,* 147 Pa. 523, 23 A. 838—was the person who was held to be estopped a fiduciary. I know of no case which holds that a cestui que trust can lose his property rights in the trust res through an estoppel by reason of an ultra vires act or representation by the trustee, where the person seeking to assert the estoppel knew that he was dealing with a fiduciary and not with a person acting in his own right. If such were the law, persons would be under no greater restrictions in transactions with fiduciaries than with individuals, and the rights of a cestui que trust would be wholly at the mercy of his trustee. Hardt, knowing that Lieberman was the liquidating trustee of the Building and Loan Association, was bound to know the limitations on Lieberman's power to surrender any of the property rights of the Association in the Pearlman trust; therefore he cannot invoke the doctrine of estoppel.* It is true, as the majority opinion points out, that the trust agreement provided that in case of Pearlman's default the trustee could sell any part of the trust estate and purchase the same as the representative of

---

* This is especially true because it was Hardt himself who mistakenly represented to Lieberman that by failing to contribute to the loan the Association would forfeit its property rights in the policies, and actually induced Lieberman to write a letter waiving such rights. Therefore, so far from Lieberman misleading Hardt, it was Hardt who misled Lieberman.

creditors who might wish to join therein; from this it is contended that if Hardt had not been advised by Lieberman of the latter's waiver of the interest of the Association in the policies he could have put the policies up for sale and they could then have been bought in by the creditors choosing to participate in the purchase and thus the interest of the Building and Loan Association could have been effectually eliminated. The answer to this proposition is that, if the trustee desired to accomplish such a result (instead of borrowing money and keeping the policies in the trust), he was bound to pursue the course prescribed in the trust instrument and cannot claim to have been diverted therefrom by a waiver, which, he was bound to know, did not, and could not, bind the Association. Only by such a sale of the policies, which would have taken them out of the trust altogether, could the Association, if unable or unwilling to be one of the purchasing creditors, be deprived of its property interest therein, and even in that event it would have received its proportionate share, as one of the cestuis que trustent, of the proceeds of the sale.

I file this dissent, therefore, not only because of my conviction that the case is being wrongly decided, but also because the decision seems to me to establish as the law of this State what I believe to be gravely questionable doctrines. The decision of the court is erroneous, in my opinion, not because of the misapplication of correct principles, but—what is of greater importance—because of the incorrectness of the principles themselves upon which it purports to rest. This makes it the more imperative that it should not go unchallenged.

Mr. Chief Justice MAXEY concurs in this dissenting opinion.