Emerald Coal and Coke Company *v.* Equitable Gas Company, Appellant.

Argued March 26, 1954. Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*William H. Eckert,* with him *John T. Brown, John G. Buchanan, Jr., Harry W. Fawcett, W. Robert Thompson, John E. Baily, R. Wallace Maxwell* and *Smith, Buchanan, Ingersoll, Rodewald & Eckert,* for appellant.

*Earl F. Reed,* with him *Charles M. Thorp, Jr., William C. O'Neil, William D. Sutton, Frank J. Gaffney, Walter C. Montgomery* and *Thorp, Reed & Armstrong,* for appellees.

OPINION BY MR. JUSTICE ARNOLD, September 27, 1954:

This is a bill in equity brought by the plaintiffs to obtain injunctive and other equitable relief against the defendant-appellant Gas Company, because of its storage of natural gas in strata directly underlying portions of plaintiffs' active coal mining areas and

mined-out or gob areas connected therewith. The gas is injected under pipe line pressure of 980 pounds per square inch and the storage in question is known as the Pratt Pool.

The complaint asserts, inter alia, that the plaintiffs operate two large electrically mechanized underground coal mines in Greene County, Pennsylvania, which produce metallurgical coal for the steel industry; that one of these mines has been existent since 1902 and the other since 1921; that prior to the opening of said mines the natural gas which formerly had been present in the subterranean cavities beneath the coal seams had been largely removed and the pressure thereof reduced to a minimum; that the plaintiffs' mining rights are superior in law to the storage rights subsequently acquired by the appellant-defendant; that plaintiffs' natural user of the land is being burdened and interfered with by the appellant-defendant's artificial user through the storage of gas directly beneath the plaintiffs' mines, and that this constitutes an illegal trespass; that the storage by appellant of large quantities of explosive gas, contained under a pressure of 700 pounds per square inch, places in jeopardy the lives of plaintiffs' employes and properties, and increases substantially the chance of mine explosions and fires; that among the particular hazards which the defendant's operations have created are the risk of a coal-cutting machine biting into the casing of an uncharted well connected with Pratt Pool and containing storage gas under high pressure, the risk of gas rising up from the storage sands through and around the deteriorated casings of abandoned wells and thence into the mine workings, and the risk that during the repeated surge of high-pressure gas, inside the Pratt Pool and withdrawal wells, passing through the coal seams and other mine areas, a lethal amount of the

594

gas is liable to escape into the mines. The plaintiffs pray for injunctive relief and such other relief as the chancellor might be warranted in granting.

To the complaint the defendant files preliminary objections, but only eleven of these are germane to the present appeal, these raising the question of the jurisdiction of the court under the Act of 1925, P. L. 23, 12 PS §672.

Defendant contends that the court of equity has no jurisdiction over these proceedings for three reasons: (1) that jurisdiction was conferred upon the Federal Power Commission by the Natural Gas Act of 1938, 15 U.S.C.A. §717; or (2) that if the Federal Power Commission does not have said jurisdiction the same rests in the Pennsylvania Public Utility Commission; or (3) that the plaintiffs cannot proceed without joining, as necessary parties-defendant, the lessors of the lands used for storage.

The defendant operates under authority of certificates of public convenience and necessity issued by the Federal Power Commission and by the Pennsylvania Public Utility Commission. It does engage in the transportation and sale of gas in interstate commerce. It is denied by the plaintiffs that gas from the Pratt Pool passes into interstate commerce. It is true that the defendant is subject to the control and regulations of the Federal Power Commission and the Pennsylvania Public Utility Commission. But none of these considerations can oust the jurisdiction of the court of equity under the circumstances of this case. We must therefore hold that the court has power to enter into the inquiry posed by the complaint, without regard to the control or regulation exercisable by these administrative agencies. "Congress meant to create a comprehensive scheme of regulation *which would be complementary in its operation to that of the states,*

without any confusion of functions." (Italics supplied): *Public Utilities Commission v. United Fuel Gas Co.*, 317 U. S. 456, 467, 87 L. Ed. 396. Defendant does not question that equity has the power to grant the relief sought, but only contends that the jurisdiction has been lost by virtue of the two statutes.

Admitting that the gas which is stored in the Pratt Pool was transported in interstate commerce, we must yet hold that once it has reached these facilities for storage it has come to rest and is then subject to local regulation. It is not stored solely as a step in further interstate transportation or sale, but is thereafter transported and sold in *areas of this Commonwealth,* when demands call for its use. The cases cited by the defendant to sustain its contention that this activity is interstate are not in point, for in those cases the facilities were solely temporary interruptions in the interstate commerce of the product. Here the storage is an essentially local aspect of its business.

Moreover, the Natural Gas Act excludes the activity in question from that Act. Section 1(b), C. 556, 52 Stat. 822, 15 U.S.C.A. §717 (b) specifically excludes from its application "the local distribution of natural gas . . . the facilities used for such distribution . . . the gathering of natural gas." This language is plain and unambiguous and necessarily concludes any control by the Federal Power Commission over the facilities for storage, i.e. facilities for gathering and distributing gas locally. These are left to local regulation and control. Such facilities are not within the jurisdiction of the Federal Power Commission. See *Federal Power Commission v. Panhandle Eastern Pipe Line Co.*, 337 U. S. 498, 69 S. Ct. 1251, and *Connecticut Light & Power Co. v. Federal Power Commission,* 324 U. S. 515, 65 S. Ct. 749. As to the effect of the company's interstate activity in such cases upon the exemp-

tions of the Act, the Supreme Court held in *Panhandle Eastern Pipe Line Co. v. Michigan Public Service Commission*, 341 U. S. 329, 334, 337, 71 S. Ct. 777: "By this Act Congress occupied only a part of the field. . . . It does not follow that because appellant is engaged in interstate commerce it is free from state regulation or free to manage essentially local aspects of its business as it pleases." To hold otherwise would be to nullify the whole provision of the exemption,—a result which cannot be sustained by reason or common sense.

Nor does the Pennsylvania Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1101, deprive the court of jurisdiction. The Act states that unless otherwise provided nothing contained therein "shall . . . abridge or impair any of the obligations, duties, or liabilities of any public utility . . . in equity or under the existing common or statutory law of the Commonwealth, . . . [nor] in any way abridge or alter the existing rights of action or remedies in equity or under the common or statutory law of the Commonwealth, *it being the intention that the provisions of this act shall be cumulative and in addition to such rights of action and remedies.*" (Italics supplied). There is nothing in the Act that ousts equity's jurisdiction in this case, and there is no question that its jurisdiction is retained. Cf. *Commonwealth ex rel. Shumaker v. New York & Pennsylvania Company*, 367 Pa. 40, 79 A. 2d 439; *Pennsylvania Railroad Company v. Puritan Coal Mining Company*, 237 U. S. 121, 35 S. Ct. 484.

There is no question about equity's jurisdiction generally to grant relief in this case because of the dangerous nature of the acts sought to be enjoined, and in the event of accidents, to avoid a multiplicity of suits. Equity has the right and power to determine the instant case.

Defendant contends that if the court is granted

such power its decree can lead to a forced abandonment of its facilities, a result in the teeth of the provisions of the Natural Gas Act and of the Public Utility Law which provide that abandonment may be had only with the approval of the Commission. The answer to this is that there is no abandonment directed by the court at this stage of the proceedings. Abandonment necessarily implies the voluntary or intentional act of the party having the facility, right or power to relinquish it. Here, if the court should grant full injunctive relief, the cessation would be *forced* upon defendant. See *Pearlman Trust,* 348 Pa. 488, 35 A. 2d 418. Furthermore, the court may grant relief short of what it particularly considers a cessation. See *Meth v. Meth,* 360 Pa. 623, 62 A. 2d 848.

Lastly, defendant contends that the lessors of lands in which it stores gas are indispensable parties-defendant in this proceeding, having leased the lands to the defendant for the purpose of the storage. It may be observed that nowhere in the complaint is any averment made that the lessors of the land have committed any tortious act against the plaintiffs,—nor have they. The present action is based upon a tortious "use" of the land by this defendant and in nowise attempts to attack anything creating the leasehold. As pointed out by Judge HOOK writing for the court below: "This case on its merits concerns solely the acts of the defendant, its lessors should not be considered indispensable parties to this proceeding." Cf. *Maxson v. McElhinney,* 370 Pa. 622, 88 A. 2d 747. The rights and duties of the defendant and its lessors remain necessarily as provided in the leases, regardless of the outcome of this proceeding brought solely to determine whether the particular use of the lands by defendant constitutes a tortious act against the plaintiffs.

Order affirmed, costs to abide the event.