**Ulbricht Estate**

*Edward J. Gilson,* for petitioner.

SHOYER, J., December 1, 1970.—The administrators of decedent's estate have filed a petition for leave to abandon premises 254 West Wensley Street, Philadelphia.

Decedent died November 3, 1969, intestate, survived by two brothers and two sisters. The Register of Wills of Philadelphia granted letters of administration to petitioners on January 20, 1970. On October 7, 1970, the administrators, joined in by the other heirs, filed this petition which alleges, inter alia, that decedent's estate consists of $712.94 in cash and premises 254 West Wensley Street, Philadelphia, of no value. This is a two-story brick, row dwelling containing 14 feet on Wensley Street and extending of that width in depth 48 feet to an alley; decedent's estate is insolvent, his debts, funeral expenses, last illness and administration expenses total $2,512.30 which were paid by decedent's brothers and sisters; that the house has been vacant, boarded up and produces no income; the Philadelphia Housing Development Corporation is not interested in the property and will not accept title to it even as a gift.

It was testified that decedent had lived there alone for many years. He did no cooking there, eating all his meals at the Sears-Roebuck plant where he worked, and on weekends in restaurants not far from his

home. As a consequence, the kitchen and other rooms in the house had greatly deteriorated. In February, 1969, he was hospitalized and never able to return to his home prior to his death on November 3, 1969. In his absence, it became necessary to board up the house to protect it from vandalism. Vandalism continued, however, and it was frequently necessary to replace the boarding.

Other houses in the street are vacant. Some have been razed. Their debris laden lots remain. No one, not even the Philadelphia Housing Authority would take this house when offered as a gift. The assessment of $2,400 is so low that the heirs sought no reduction from the Board of Revision of Taxes.

A local realtor testified that it would cost more than the property is worth to make it livable and he would not accept it as a gift. He knew of owners in the neighborhood who, in the course of repairing and improving their own properties, had suffered repeated vandalism before the repairs were completed and the properties occupied. It is the same tragic situation that is constantly being repeated in the old neighborhoods of every large city in America. We are told that in New York City between 1965 and 1968, 100,000 housing units were abandoned. In Philadelphia, the comparable figure is over 20,000. (These statistics have been taken from an article by Bernard C. Meltzer, the real estate expert of the Philadelphia Evening Bulletin, edition of October 16, 1970.) This court through the many petitions presented to us in connection with sales by the personal representative and the excusing or setting of bond (Fiduciaries Act of April 18, 1949, P. L. 512, §541, 20 PS §320.541) has been made constantly aware of the depreciated condition of decedent-owned real estate. This is the second petition for abandonment of residential property that has come before the court in a period of one month.

The current situation recalls the Great Depression of the '20's and '30's, aggravated now by widespread and seemingly unpreventable vandalism.

The law makes the annual real estate taxes the personal obligation of the fee owner on January 1st of each year. If these owners cannot find a buyer or even a willing donee, it may be necessary for the heirs, in order to escape personal liability for the annual taxes, to pay a strawman to accept title as grantee. They will thus transfer a personal problem to the community which has created the problem by its failure to come forward with effective measures to check the decline of residential real estate. Stop-gap rehabilitation remedies to date have been no more effective than a band-aid on a cancer and have been severely criticized as futile and inadequate by the recent investigating grand jury.

Section 502 of the Fiduciaries Act of 1949, P. L. 512, 20 PS §320.502, provides:

"Renunciation of right to administer property —When any property is of no value to the estate, the court may authorize the personal representative to renounce his right to administer it."

The Joint State Government Commission states in its "Comment—Act of 1949—This section is consistent with existing law under which a fiduciary is not required to exercise his right to administer estate property when in his reasonable judgment it is inadvisable to do so: Cf. Reynolds v. Cridge, 131 Pa. 189; Pearlman Trust, 348 Pa. 488. This section should prove helpful to personal representatives and to the estate when the personal representative hesitates about assuming the risk that his judgment to abandon property for estate purposes may prove to have been in error. When the personal representative's right to administer is renounced, full legal and equitable title will be in those beneficially interested in the asset,

subject, of course, to their right to disclaim: cf. Roop v. Greenfield, 352 Pa. 232."

In Roop v. Greenfield, 352 Pa. 232 (1945), there was a devise of the residuary estate. Included was a property encumbered by a mortgage greater than its value. This property had been in the possession of the mortgagee for several years prior to testator's death. The court held that there was no inference of the acceptance of a gift which has no value and which would impose liability for real estate taxes. The estate was insolvent and the mortgagee sought to hold the widow, who was the general residuary devisee, personally liable for delinquent taxes which the mortgagee paid in connection with his acquisition of the title to the property through foreclosure eight years after testator's death. In her defense, defendant pleaded that her husband's estate was insolvent, and that she never knew of her husband's ownership of the subject real estate. She never received any of the rights or exercised dominion over the property and she immediately disclaimed and renounced any interest in the property by a formal writing which she duly acknowledged and caused to be recorded in the office of the Recorder of Deeds for Philadelphia, and on the same day sent a duplicate original of the disclaimer to the Receiver of Taxes of Philadelphia and copies to the other parties in interest. The court held that the defense was sufficient. And, at page 236:

"But, before there can be a presumption of an acceptance of a gift or devise there must exist a subject-matter of some value, however slight, capable of transmission by the putative donor or testator as his bounty. In the instant case, it clearly appears from the facts alleged in the affidavit of defense that the testator's estate was hopelessly insolvent . . ."

Recently, in McCredy Estate, 42 D. & C. 2d 519, 17 Fiduc. Rep. 405, annotated in Fiduciary Review, July

1967, p. 3, an executor who was also the sole beneficiary of the estate of a deceased income beneficiary of a testamentary spendthrift trust validly disclaimed or renounced all income which accrued during the 32 days that the income beneficiary had survived testatrix. The court, in effect, held that the right to disclaim is a *property* right.

In Edwin Forrest Home v. Shattuck, 64 Pa. Superior Ct. 239, the court said, page 242:

"When a man dies intestate the law immediately casts the descent upon his heir and vests in the latter title to his lands. The law also makes the owner of seated lands personally liable for the general taxes exacted for the support of the government. Whether an heir can escape liability for the payment of such taxes upon the ground that he has abandoned the inheritance might in some circumstances be a very interesting question to consider. It may, however, be proper to say that it would require very clear and unequivocal action indicating an abandonment of the estate, before the heir could be permitted to escape personal liability for the payment of the taxes on seated lands, even if that could be permitted in any case . . ."

However, in the instant matter, we are not faced with the tax on the seated lands, merely the right to abandon the asset.

In Bute Estate, 355 Pa. 170 (1946), the Supreme Court held that ". . . when the beneficiary renounces his legacy he is absolved from any obligation to pay an inheritance tax thereon and the succession becomes taxable only in accordance with the ultimate devolution of the property," and, at page 174, "Thus, by his renunciation, a donee is thereby released from all obligations which an acceptance would have imposed on him."

Here, we are not concerned with any claim for

taxes, solely with the right to disclaim. No one has to accept an inheritance and no law prohibits an heir from abandoning an unwelcome fee after he has determined that to hold on to it would incur a never ending expense. It is obvious from the petition and the testimony that the proposed abandonment is not detrimental to the creditors or to the next of kin of decedent. Leave to abandon the premises, 254 West Wensley Street, Philadelphia, is granted. And it is

## DECREED

This December 1, 1970, upon consideration of the annexed petition and after hearing, the court finds premises situate and known as 254 West Wensley Street in the City of Philadelphia, Pa., as more fully described in the within petition, to be of no value to the Estate of Fritz Alfred Ulbricht, Deceased, and Robert K. Ulbricht and Elsa Goelz, Administrators of said estate, are authorized under the provisions of section 502 of the Fiduciaries Act of 1949 to abandon the aforesaid property.

Compliance with this authorization to be indicated by the filing of record of an affidavit by the administrators as to the disposition made.